Robin **ANDERSON**

v.

**The COCA COLA BOTTLING COMPANY OF NEW YORK, INC., and John Pantano.**

**Civ. No. H–90–576 (PCD).**

United States District Court, D. Connecticut.

Aug. 13, 1991.

---

Anthony O. Famiglietti, Famiglietti, Thompson, Vollono & Mastrianni, Plainville, Conn., for Robin Anderson.

Robert L. Duston, Washington, D.C., Kim Coran, Brenda A.. Eckert, Mark K. Ostrowski, Shipman & Goodwin, Hartford, Conn., for Coca Cola Bottling Co. of New York, Inc.

Robert L. Duston, Henry A. Platt, Schmeltzer, Aptaker & Shepard, P.C., Washington, D.C., for defendants.

Claudia A. Baio, Jon S. Berk, Gordon, Muir & Foley, Hartford, Conn., for John Pantano.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff sued defendants, the Coca Cola Bottling Company ("Coca Cola") and John Pantano ("Pantano"), after Coca Cola terminated plaintiff's employment. Count I alleges that Coca Cola demoted and discharged plaintiff, without just cause, and in retaliation for his informing upper management of alleged wrongful conduct by fellow employees. Amended Complaint at ¶¶ 15 and 17. The second count alleges intentional infliction of emotional distress and tortious interference.

*Facts*

Plaintiff was first hired by Coca Cola in 1984 as a "Route Driver." In February, 1986, he was promoted to District Sales Manager and ceased to be a union member covered by a collective bargaining agreement. Plaintiff asserts that, as District Sales Manager, he was subject to an implied contract. Amended Complaint at ¶ 7. On May 14, 1987, plaintiff was demoted to "Route Merchandiser" [1], allegedly in retaliation for a letter which plaintiff sent to management accusing fellow managers, including Pantano, of using drugs and "stealing" company time. *Id.* at ¶¶ 10–13.

As a result of his demotion, plaintiff received a higher hourly rate of pay but lost his company car, a flexible work sched-

---

1. Also referred to as "Bulk Merchandiser."

ule, and supervisory responsibilities, and was expected to do more physical labor. *Id.* at ¶ 16. Plaintiff once again became a unionized employee. Deposition of Robin Anderson at 116. In addition, Pantano, who replaced plaintiff as District Sales Manager, became plaintiff's supervisor and allegedly harassed him by falsely accusing him of dishonesty. *Id.* at ¶¶ 18–19. The harassment allegedly occurred on May 20, June 2, and June 23, of 1987, when Pantano issued written warnings asserting that plaintiff had inaccurately reported mileage, taken unauthorized overtime, and failed to service an account. Anderson Deposition at 130–7, 140, and 153.

On June 24, 1987, plaintiff was terminated, allegedly also in retaliation for the letter sent to management. Defendants construe count I as alleging breach of contract, breach of implied covenant of good faith and fair dealing and wrongful discharge. Defendants move for summary judgment as to both counts on the ground that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts plaintiff's common law claims.

*Discussion*

Rule 56(c), Fed.R.Civ.P., provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court is not to resolve disputed issues of fact, but must assess whether any genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities are to be resolved and all reasonable inferences to be drawn against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986); *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). For summary judgment to be granted, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy as to the inferences to be drawn from them. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

*Preemption*

■ Section 301 of LMRA confers subject matter jurisdiction on the federal courts over suits alleging violations of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) referring to *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). In enacting § 301, Congress intended that uniform federal labor law would prevail over inconsistent local rules. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1984); *Lucas Flour Co.,* 369 U.S. at 104, 82 S.Ct. at 577. As a result, disputes over the meaning to be given a contract term and the consequences of a breach of contract must be resolved according to uniform federal law. *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. at 1911.

■ When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law. *Allis–Chalmers,* 471 U.S. at 221, 105 S.Ct. at 1916; *Lingle,* 108 S.Ct. at 1883. If a state-law claim can be resolved without interpreting the collective bargaining agreement, the claim is "independent" of the agreement and is not preempted by § 301. *Lingle,* 108 S.Ct. at 1883.

■ Nor may plaintiff avoid preemption by also bringing claims against his immediate supervisor, Pantano. *Hillard v. Dobelman,* 774 F.2d 886, 887 (8th Cir.1985) (plaintiff's claim of tortious interference against three supervisory employees preempted by § 301). To the extent plaintiff's claims against Coca Cola are found to be preempted by § 301, the same claims against Pantano are likewise preempted.

1. Claims Arising Out of Termination

Defendant argues that plaintiff's employment and termination were governed by a

collective bargaining agreement ("CBA"), rendering plaintiff's claims preempted by § 301. Plaintiff concedes he became a member of the union and was covered by the bargaining unit when he was demoted to route merchandiser. Deposition of Anderson at 116[2]. He insists, however, that as a probationary employee, his employment and discharge was not subject to the collective bargaining agreement and the issue of what contract or agreement governed plaintiff's employment at the time he was terminated is a material fact which must be decided before a jury. Plaintiff relies on a letter from the union informing him that his "case is not arbitrable under the Contract [because] [a]t the time of [his] discharge, [he was] a new employee under the probationary period." Plaintiff's Memorandum in Opposition, Exhibit A. Under the agreement,

> [n]ew employees ... shall be considered on probation for the first ninety (90) days of continuous employment ... during which no layoff, suspension, transfer, discipline or discharge with respect to such employee shall be construed as a violation of any of the provisions of this Agreement or cause for or subject to the grievance procedure or arbitration ...

*See* Declaration on Mike Canning, Exhibit A, CBA at 3. From this plaintiff concludes his employment was not covered by the collective agreement.

■ The fact that plaintiff was a probationary employee does not alter his status as a union member covered by the collective bargaining agreement. *See Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1284–5 (9th Cir.1989); *see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir.1987). It is also irrelevant that the CBA offers plaintiff no effective remedy because of his probationary status. *Young*, 830 F.2d at 998 (state law claim preempted under § 301 even though plaintiff's probationary status may ultimately

bar recovery under CBA). "Federal law recognizes ... that a union may, in the give and take of collective bargaining, waive the employee's contractual rights." *Id.;* citing, *NLRB v. Allis–Chalmers Mfg. Co.*, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), *reh' denied,* 389 U.S. 892, 88 S.Ct. 13, 19 L.Ed.2d 202 (1967); *Hollins v. Kaiser Found. Hosps.*, 727 F.2d 823, 825 (9th Cir.1984) (per curiam).

From the time plaintiff was demoted until his termination, he was a member of the union and his employment was governed by the collective bargaining agreement. *See* Declaration of Mike Canning at ¶ 5. The remaining question is whether resolution of plaintiff's claims requires interpretation of the agreement.

### a. *Breach of Contract*

■ Plaintiff's breach of contract claim cannot be resolved without interpretation of the CBA and it is preempted by § 301. Plaintiff alleges his implied contract was breached when he was terminated without "just cause." The only "just cause" provision that could apply to plaintiff's employment contract is contained in the collective bargaining agreement. *See* Declaration on Mike Canning, Exhibit A, CBA at 3. "The employer agrees that it will not enter into any agreement or continue any agreement with any employee which will be in conflict with this Agreement." *Id.* at 1; *see also, Chmiel,* 873 F.2d at 1285. Plaintiff's claim cannot be resolved without determining what is "just" or "unjust" under the agreement. It is therefore preempted by § 301.

### b. *Breach of Implied Covenant of Good Faith and Fair Dealing*

■ A claim of breach of an implied covenant of good faith and fair dealing is likewise preempted. Plaintiff alleges that, by terminating him without just cause, defendants breached an implied covenant of good faith and fair dealing, which is im-

---

**2.** At his deposition, plaintiff testified as follows:
Q. Why did you decide to stay at Coca Cola in that new position?
A. Financial reasons. Financial.
Q. You did realize that was a unionized position?

A. Yes.
Q. You realized that you would be part of the bargaining unit again?
A. Yes.
Anderson Deposition at 116.

plied by the law "in every contract without limitation," *Magnan v. Anaconda Indus., Inc.,* 193 Conn. 558, 556, 479 A.2d 781 (1984); *see* 2 Restatement (2d) Contracts § 205 (1979), including employment contracts. *Magnan,* 193 Conn. at 569, 479 A.2d 781. The covenant is designed to provide job security to employees who at common law could be fired at will. *Young,* 830 F.2d at 999. Unionized employees enjoy job security under their collective bargaining agreement and § 301 preempts a cause of action for breach of covenant of good faith and fair dealing. *Id.; see also Cook v. Lindsay Olive Growers,* 911 F.2d 233, 239 (9th Cir.1990).

### c. *Tortious Interference and Intentional Infliction of Emotional Distress*

Plaintiff alleges that Pantano, acting as an agent of Coca Cola, began to harass plaintiff in an effort to inflict emotional distress and interfere with plaintiff's employment contract with Coca Cola. Amended Complaint at ¶¶ 19, 21–25. The alleged harassment occurred on May 20, June 4 and June 23, 1987, when Pantano issued written warnings to plaintiff. *Id.* at ¶ 19; Anderson Deposition at 268.

 Whether a tort claim is preempted by § 301 is determined by whether the state:

'confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.'

*Young,* 830 F.2d at 999, quoting *Allis-Chalmers Corp.,* 471 U.S. at 213, 105 S.Ct. at 1912. The claim of tortious interference and intentional infliction of emotional distress arise out of the same conduct, the alleged harassment by Pantano. Defendants maintain that the warnings were issued in accordance with the collective bargaining agreement, which requires the em-

ployer "to give at least one (1) warning notice of infraction of rules or of specific complaint, in writing." *See* Declaration of Mike Canning, Exhibit A, CBA at 6–7. Plaintiff's tort claims arise out of work related disputes governed by the collective bargaining agreement. Resolution of plaintiff's tort claims requires analysis of the collective bargaining agreement to determine whether the warnings were warranted and properly given under the agreement. *Johnson v. Beatrice Foods Co.,* 921 F.2d 1015, 1019–21 (10th Cir.1990) (emotional distress claim preempted because collective bargaining agreement required defendant to issue written warnings and court could not determine whether conduct was outrageous without determining whether the disciplinary action was allowed under the agreement).[3]

### d. *Wrongful Discharge*

Plaintiff contends that, as an employee at-will, he is entitled to claim wrongful discharge. *Magnan,* 193 Conn. at 569, 479 A.2d 781; *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 210, 520 A.2d 217 (1987). A cause of action for wrongful discharge has been recognized when an at-will employee alleges that his discharge contravenes public policy. *Magnan,* 193 Conn. at 572, 479 A.2d 781; *Sheets,* 179 Conn. at 471, 427 A.2d 385.

 Plaintiff cannot sustain a claim of wrongful discharge on an allegation of termination without just cause, which would be covered by the collective bargaining agreement. *Paradis v. United Technologies, Pratt & Whitney Division,* 672 F.Supp. 67, 70 (D.Conn.1987). Article VI, ¶ 60, of the CBA granted Coca Cola, within its discretion, "[t]he right to discharge employees, with just cause." *See* Declaration on Mike Canning, Exhibit A, CBA at 6. Resolution of plaintiff's wrongful discharge claim would necessarily require interpretation of the agreement to determine

---

**3.** Having dismissed plaintiff's tort claims, the sufficiency of the allegations thereof need not be considered.

if he was discharged for just or unjust cause. See *Paradis*, 672 F.Supp. at 69 (plaintiff's wrongful discharge claim preempted by § 301 because resolution required interpretation of whether termination was just or unjust under bargaining agreement); *see also Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 105–6 (2d Cir.1987); *Lingle*, 108 S.Ct. at 1882. To the extent plaintiff asserts a wrongful discharge claim based on a termination without cause, it is preempted by § 301.

 Not every claim of wrongful discharge is necessarily preempted by § 301. While the complaint fails to identify plaintiff's theories of liability, it can be inferred from Count I that plaintiff is alleging retaliatory discharge. Plaintiff claims that defendants discharged him "in retaliation for his informing upper management of conduct by fellow employees which he knew to be unsafe, unacceptable and illegal." Amended Complaint at ¶ 17. The tort of retaliatory discharge has been recognized in this District. *See Baldracchi*, 814 F.2d at 105–6; *see also Lingle*, 108 S.Ct. at 1879. Such a claim would not necessarily require interpretation of the collective bargaining agreement and would not be preempted by § 301. *See Baldracchi*, 814 F.2d at 105–6; *Lingle*, 108 S.Ct. at 1882.

Retaliatory discharge would be established by proof that 1) plaintiff was discharged; and 2) Coca Cola's motive was based on his letter, in violation of a public policy or statutory right. *Lingle*, 108 S.Ct. at 1882. Interpretation of the collective bargaining agreement is not necessary to determine the existence of these elements. In responding, Coca Cola would have to show a non-retaliatory reason such as "just" cause for the discharge. Yet, it need not be determined whether plaintiff's discharge was for "just" or "unjust" cause but only if the discharge was in retaliation for plaintiff's exercise of a protected right. *Baldracchi*, 814 F.2d at 105. *Lingle*, 108 S.Ct. at 1882 (state-law claim of retaliatory discharge, as a result of plaintiff's filing of a workmen's compensation claim, held independent from the collective bargaining

agreement). "[E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle*, 108 S.Ct. at 1883.

To assert a retaliatory discharge claim, however, plaintiff would have to establish a public policy or statutory right to be free from retaliatory discharge, which is not waived by the collective bargaining agreement. *See Baldracchi*, 814 F.2d at 105; *Lingle*, 108 S.Ct. at 1881 and 1882, n. 7. While plaintiff has not asserted a basis for a retaliatory discharge claim, defendants have not addressed this claim and a motion for summary judgment as to this claim would be premature. Thus, defendants' motion is denied without prejudice with respect to this claim. Plaintiff shall, on or before 8/30/91, amend his complaint in accordance with this ruling and clearly state the basis under which he seeks relief.

### 2. Claims Arising Out of Demotion

 In addition to the claims arising out of his termination, plaintiff claims Coca Cola breached an implied employment contract and covenant of good faith and fair dealing by demoting him without just cause. Amended Complaint, ¶ 15. The parties agree that, as a District Sales Manager, plaintiff was an at-will employee, not covered by the CBA. However, defendant denies the existence of an implied employment contract with plaintiff.

#### a. *Breach of Contract*

The issue is whether the employment was subject to an implied contract. Plaintiff asserts:

[t]he complaint clearly states that there was an implied contract of employment, pursuant to various express and implied promissory representations ... What, in fact, made up this contract must be determined by the Court.

Plaintiff's Memorandum in Opposition to Defendant Coca Cola Bottling Company's Motion for Summary Judgment, at 5. The plaintiff, however, has not introduced any evidence of such a contract. See *Mursch v. Van Dorn Company*, 851 F.2d 990 (7th Cir.1988) (Oral statement, "As long as you do your job, you'll be here until you're 100" could not reasonably be interpreted to alter plaintiff's at-will status); *Brown v. Safeway Stores, Inc.*, 190 F.Supp. 295 (E.D.N.Y.1960) (District Manager's statements that "there would always be a job for each one of us" and that "we would have jobs as long as we wanted them, as long as we lived ..." were "too fragile a base on which to rest such a heavy obligation inherent in such a contract.") Absent evidence, the terms of his employment when he was demoted cannot be said to be genuinely at issue.

Furthermore, plaintiff admits that he never saw any Coca Cola documents stating that he could not be reassigned or terminated from his position as district sales manager without just cause. Deposition of Anderson at 180. Plaintiff also admits that he was never promised that he could not be reassigned or terminated without just cause, and concedes that he could be terminated or demoted "for any reason at all." Deposition of Anderson at 180–181. Plaintiff confesses that he cannot locate his employee handbook and cannot remember what it said. Deposition of Anderson at 179. Given these admissions, it is undisputed that, prior to his demotion, plaintiff was an employee at-will. Thus, defendant's motion for summary judgment of this claim is granted.

### b. Breach of Covenant of Good Faith and Fair Dealing

As discussed above, the covenant of good faith and fair dealing is implied by the law in every employment contract as a means of protecting the rights of at-will employees. *Magnan*, 193 Conn. at 569, 479 A.2d 781; *Young*, 830 F.2d at 999. The court has been unwilling, however, to:

enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves 'impropriety ... derived from some important violation of public policy.'

*Magnan*, 193 Conn. at 572, 479 A.2d 781; *Sheets*, 179 Conn. at 475, 427 A.2d 385. Though plaintiff has not alleged a violation of any public policy, he maintains that he "may be entitled to recover if he can prove a demonstrably improper reason for his dismissal" and asserts that "these are clearly issues that cannot be decided by Summary Judgment when the parties are not agreed upon the subordinate facts." Plaintiff's Memorandum in Opposition to Defendant Coca Cola Bottling Company's Motion for Summary Judgment at 7.

In this case, however, plaintiff relies exclusively on his pleadings, which do not suggest a genuine factual dispute. Plaintiff has not even alleged a basis for a public policy violation. A conclusory allegation is insufficient to withstand a motion for summary judgment. Rule 65(c) permits a proper summary judgment motion to be opposed by pleadings, depositions, answers to interrogatories, admissions on file, and affidavits but not the pleadings themselves. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265. Defendant's motion for summary judgment is accordingly granted [4].

### Conclusion

Defendants' motion for Summary Judgment is granted in part and denied in part.

SO ORDERED.

---

**4.** Even assuming plaintiff could successfully allege and prove a violation of public policy, the claim may be barred by the statute of limitations. There is a three year statute of limitations for intentional torts in Connecticut. Conn.Gen.Stat.Ann. § 52–577. Plaintiff was demoted on May 14, 1987 and did not bring this lawsuit until June 14, 1990. In addition, a claim of retaliatory demotion would similarly be barred.