Paul A. LATELLA, Plaintiff,

v.

**NATIONAL PASSENGER RAILROAD CORPORATION ("AMTRAK") and the International Brotherhood of Maintenance of Way Employees, Local 90 and Local 1718, Defendants.**

No. Civ. 3:99CV816(PCD).

United States District Court,
D. Connecticut.

Nov. 15, 1999.

Joseph S. Dey, III, Edmund Q. Collier, Dey, Smith & Collier, Milford, Connecticut, for plaintiff.

Cathleen Ann Giannetta, Karen Irene Greenberger, Rory Eric Jurman, Land-

man, Corsi, Ballaine & Ford, New York City, for defendant, National Passenger Railroad Corporation.

Leon M. Rosenblatt, West Hartford, Connecticut, for defendant, International Brotherhood of Maintenance of Way Employees, Local 90 and Local 1718.

## *RULING ON MOTION TO DISMISS*

DORSEY, Senior District Judge.

Plaintiff brought this action against his former employer, alleging that his termination for excessive absenteeism violates his rights under the Family and Medical Leave Act of 1993 (the "Act" or "FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff claims that certain absences from employment in January and February 1999 constituted "leave" under the FMLA and should not have counted against him under his employer's absenteeism policy. Defendant moves to dismiss Plaintiff's FMLA claims pursuant to Fed.R.Civ.P. 12(b)(6).

### I. *BACKGROUND*

Plaintiff alleges the following. Defendant Amtrak employed Plaintiff as a truck driver. V. Compl. at ¶ 4. On March 17, 1999, Amtrak notified Plaintiff that his employment was terminated for violating its Excessive Absenteeism Policy. *Id.* at ¶¶ 6–8. Under the policy, an employee who fails to report to work, reports to work late, or departs from work early on three occasions within a 30–day period is considered "excessively absent." An employee found to be excessively absent for the fourth time within a 12–month period is subject to dismissal. V. Compl., Ex. B. On December 21, 1998, Plaintiff waived a formal investigation and served a five-day suspension after being found excessively absent for the third time. Pl.'s Aff., Ex. 4a.

Shortly thereafter, Plaintiff missed work on seven occasions in 1999: January 30, February 4–5, and February 8–11. On March 2, 1999, Amtrak held a disciplinary hearing to determine if Plaintiff should be discharged for a fourth violation of the Excessive Absenteeism Policy. Plaintiff was provided with union representation. At the hearing, Amtrak employees admitted that some of Plaintiff's absences were due to his children's ill health. Moreover, Plaintiff testified that he notified his supervisor on February 8 that his son was suffering from an illness and that he would need more time off from work. *See* Pl.'s Opp'n at 5.

Plaintiff claims that his termination violated the FMLA. He charges Amtrak and Defendants Local 90 and Local 1718 ("the unions") with breaching their duty to notify him of his rights under the FMLA and with inflicting severe emotional distress. He also charges the unions with breaching their duty of fair representation. Plaintiff sues for compensatory damages, punitive damages, and attorney's fees. Defendants move to dismiss Plaintiff's FMLA claims for failure to state a claim upon which relief can be granted. In addition, they argue that Plaintiff's non-FMLA claims are preempted by the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*

### II. *DISCUSSION*

#### A. LEGAL STANDARD

A motion to dismiss should be granted only when "it appears beyond doubt" that plaintiff fails to state any claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are accepted as true and any well-pleaded factual allegations are construed in Plaintiff's favor. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). Consideration is limited to the facts stated in the complaint and the documents attached to the complaint as exhibits. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

## B. PLAINTIFF'S FAMILY MEDICAL LEAVE ACT CLAIMS

### 1. Was Plaintiff Entitled to FMLA Leave?

Under the FMLA, an eligible employee will be entitled to a total of 12 workweeks of leave during any 12–month period "[i]n order to care for the spouse, or son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612. The FMLA defines a "serious health condition" as ". . . an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611. The Department of Labor has promulgated regulations that shed more light on the definition of "serious health condition." The regulations state that a serious health condition under the FMLA means a physical or mental condition involving:

> (1) *Inpatient care* (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical facility, including any period of *incapacity* . . . or any subsequent treatment in connection with such inpatient care; or

> (2) *Continuing treatment* by a health care provider. A serious health condition involving continuing treatment by a health care provider includes . . .

> (i) A period of *incapacity* . . . of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition. . . .

29 C.F.R. § 825.114.

■■■■ Construing the facts in the light most favorable to the Plaintiff, six out of the seven absences could be justified under the FMLA. Plaintiff offers no evidence of his son's illness to excuse his absence from work on January 30. Plaintiff shows that his son was hospitalized from February 4–7, excusing his absences on February 4–5 under the inpatient care prong of the serious health condition definition.

Plaintiff offers little proof to justify his absences from February 8–11. Since Plaintiff's son was not hospitalized at this time, Plaintiff must show that his son was under the "continuing treatment" of a health care provider under section (2) or section (3) of the Department of Labor regulations. Plaintiff's own testimony that his son was incapacitated by illness does not suffice. The FMLA requires confirmation of this incapacity by a health care provider. *See Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997). Plaintiff claims that when he returned to work, he provided his supervisor with a doctor's note regarding his son's hospitalization. Although the doctor did not state on the note that Plaintiff needed to care for his son at home from February 8–11, this may have been his medical opinion and he may have conveyed this opinion to Plaintiff orally. It is reasonable to infer from the facts asserted that Plaintiff's son's hospitalization required Plaintiff to care for his son at home immediately afterward. Accordingly, Plaintiff states a viable claim that his absences should have been excused under the FMLA.

■■ Amtrak also argues that Plaintiff failed to give adequate notice of his intention to take FMLA qualifying leave. The FMLA requires employees to give employers notice of their intent to take leave, and, if possible, this notice should be given at least thirty days in advance. *See* 29 U.S.C. § 2612(e)(1). For a medical emergency requiring leave "to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when the FMLA is involved." 29 C.F.R. § 825.303. Notice must be given "as soon as practicable," which ordinarily means "within one or two business days of when the need for leave becomes known to the employee." 29 C.F.R. § 825.302. Plaintiff claims that he told his supervisor of his son's illness shortly after his release from the hospital. This assertion satisfies the Act's notice requirements.

Thus, the motion to dismiss Plaintiff's claim that he was terminated for taking FMLA qualifying leave (Count One) is denied.

### 2. Notification of FMLA Rights

■ Plaintiff alleges that Amtrak and the unions failed to notify him of his FMLA rights. Plaintiff fails to state a claim because no private right of action exists for a violation of the FMLA's notice requirements. *See Jessie v. Carter Health Care Ctr., Inc.,* 926 F.Supp. 613, 617 (E.D.Ky.1996). The FMLA does set out notice requirements, 29 U.S.C. § 2619(a), but the statute assesses only a civil penalty and does not authorize private damages for a willful violation of these requirements. 29 U.S.C. § 2619(b); *see Hendry v. GTE North, Inc.,* 896 F.Supp. 816, 828 (N.D.Ind.1995). Thus, Plaintiff has no cause of action against Amtrak or the unions for failing to notify him of his rights under the FMLA.

Plaintiff's claims for breach of duty to notify (Count One) are dismissed with prejudice.

### C. BREACH OF CONTRACT CLAIMS

Plaintiff also alleges that Amtrak breached their employment contract. Under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188, disputes between an employee and railroad over the terms of a collective bargaining agreement are subject to mandatory arbitration by the Railroad Adjustment Board. *See Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 324–25, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Baylis v. Marriott Corp.,* 843 F.2d 658, 662 (2d Cir.1988). Thus arbitration provides "the exclusive forum for the resolution of grievances and for the interpretation of contracts under that Act." *Baylis,* 843 F.2d at 662.

■ Plaintiff's claim against Amtrak for breach of contract necessitates interpretation of the terms of their collective bargaining agreement. An employee's state law claim for breach of contract by termi-nation without "just cause" could not be evaluated without referring to the terms of a collective bargaining agreement. *See Anderson v. Coca Cola Bottling Co.,* 772 F.Supp. 77, 81 (D.Conn.1991). Similarly, Plaintiff's claim under the implied covenant of good faith requires scrutiny of the collective bargaining agreement.

Plaintiff cites *Bates v. Long Island R.R. Co.,* 997 F.2d 1028 (2d Cir.1993), as an example of a dispute between several railroad employees and a railroad that was not subject to binding arbitration under the RLA. In *Bates,* the employees sued under the Rehabilitation Act for disability discrimination, not for breach of contract. Arbitration should not be the sole avenue to protect an employee's statutory civil rights because of the " 'distinctly separate nature' " of contractual and statutory rights. *Id.* at 1034 (quoting *Alexander v. Gardner–Denver,* 415 U.S. 36, 50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). Arbitration lacks the evidentiary rules and fact-finding tools necessary to protect federal statutory rights, such as those under FMLA. *Id.* at 1035. " '[A]lthough arbitration is well-suited to resolving contractual disputes, ... it cannot provide an adequate substitute for a judicial proceeding in protecting the statutory and constitutional rights that § 1983 is designed to safeguard.' " *Id.* at 1034 (quoting *McDonald v. City of West Branch,* 466 U.S. 284, 290, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)). Thus, the RLA precludes review of Plaintiff's contract claims.

Plaintiff's breach of contract · claims (Count Two) are dismissed without prejudice to renewal to enforce the terms of settlement or arbitration.

### D. NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Plaintiff fails to state a claim for either negligent or intentional infliction of emotional distress. Plaintiff argues that he suffered emotional distress because he was discharged without just cause. A de-

termination of whether Amtrak had just cause to fire the Plaintiff requires an examination of the Absenteeism Policy and the collective bargaining agreement. *See Anderson v. Coca Cola Bottling Co.,* 772 F.Supp. 77, 81 (D.Conn.1991). As stated before, if resolution of any state-law claim, including an emotional distress claim, depends upon interpreting a collective bargaining agreement, the state law claim is preempted. *See Dittman v. General Motors Corp.–Delco Chassis Div.,* 941 F.Supp. 284, 289–90 (D.Conn.1996). The RLA's arbitration scheme must be applied instead.

Cursory review of Plaintiff's allegations suggests that Plaintiff fails to state a claim. Amtrak must create an unreasonable risk of causing emotional distress to support a claim for negligent infliction of emotional distress. Termination of an employee, even if wrongful, does not suffice. *See Cooper v. Dick's Clothing & Sporting Goods, Inc.,* 25 F.Supp.2d 59, 61 (D.Conn. 1998) ("a plaintiff cannot rely on the allegedly wrongful termination alone, but must allege additional unreasonable conduct on defendant's part that occurred with respect to his termination").

Plaintiff's claims for intentional and negligent infliction of emotional distress (Count Four) are dismissed without prejudice to renewal to enforce the terms of settlement or arbitration.

### E. BREACH OF DUTY OF FAIR REPRESENTATION

Plaintiff charges the unions with breaching their duty of fair representation by: 1) not advising him of his rights under the FMLA; 2) not asserting his FMLA rights at the March 2, 1999 disciplinary hearing; and 3) acting arbitrarily and without good faith.

As discussed earlier, no private right of action exists for a violation of the FMLA's notice requirements against an employer or a union. Hence, Plaintiff cannot state a claim against the unions for failing to notify him of his rights under the FMLA.

Plaintiff also does not allege facts sufficient to support a claim that the unions failed to represent him at the hearing. Plaintiff offers no authority for the proposition that a union must assert statutory rights in a grievance proceeding. Plaintiff also fails to allege examples of the unions acting arbitrarily or without good faith. Moreover, a union's dealings with its members are reviewed with deference, *see Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), and the transcript of the hearing, which Plaintiff attached to his complaint, reveals that the unions vigorously defended Plaintiff.

Plaintiff's breach of duty of fair representation claims (Count Three) are dismissed with prejudice.

### III. CONCLUSION

Defendants' motion to dismiss [Dkt. No. 22] is GRANTED in part, DENIED in part consistent with this ruling.

SO ORDERED.