Kris DEILY, Plaintiff,

v.

**WASTE MANAGEMENT OF ALLENTOWN,** Defendant.

**No. CIV.A. 00–1100.**

United States District Court, E.D. Pennsylvania.

Oct. 23, 2000.

Donald P. Russo, Bethlehem, PA, for Plaintiff.

Erica A. Watkins, Washington, DC, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff Kris Deily brought this action against defendant Waste Management of Allentown under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §§ 951, *et seq.* ("PHRA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), and Pennsylvania common law. Defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Document No. 5). For the following reasons, the motion will be granted in part and denied in part.

### *Background* [1]

Plaintiff Deily claims that defendant fired him for illegitimate reasons from his job as a truck driver in 1997. Plaintiff had worked for defendant and its predecessor in interest since 1987, during which time he was out of work on two occasions, once in 1990–91 because of a skin condition called Sweet's Syndrome that causes red nodules to appear on the skin, and again in 1995 due to a work-related hernia. Plaintiff last worked for defendant on June 25, 1996, and thereafter filed a request for leave under FMLA, claiming he was unable to work because he suffered from schizophrenia. Plaintiff never returned to work, and he was not terminated until June 25, 1997, one year after he last worked for defendant. According to his complaint, plaintiff received notice of his termination on December 15, 1997.

Plaintiff then brought this action, and defendant now seeks to dismiss most of the counts in the complaint on the ground that each fails to state a claim upon which relief may be granted. Specifically, defendant argues that it is apparent on the face

---

1. The facts are extracted from the complaint, with all inferences taken in favor of plaintiff as required by the law.

of the complaint that plaintiff failed to timely exhaust his administrative remedies as to some of his claims, and failed to file this action within the appropriate statute of limitations as to other claims. Defendant also argues that summary judgment is appropriate on plaintiff's ERISA claim.

### Analysis

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must determine whether the plaintiff is entitled to relief under any set of facts consistent with the allegations of the complaint. *See Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994). In deciding a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and all reasonable inferences that can be drawn therefrom must be viewed in the light most favorable to the plaintiff. *See id.* A court may, however, also consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994). A motion to dismiss should only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

 The statute of limitations may be the basis for a motion to dismiss, provided the complaint on its face shows noncompliance with the applicable limitations period and the affirmative defense clearly appears on the face of the pleading. *See Oshiver,* 38 F.3d at 1384 n. 1; 5A Charles A. Wright & Arthur R. Miller, *Federal Prac-*

tice and Procedure § 1357, at 299 (2d ed. 1990).

### Count I—ADA Claim

Defendant argues that plaintiff failed to exhaust his administrative remedies under the ADA in a timely fashion. In order to properly exhaust his ADA claim, plaintiff was required to file a "charge" with the Equal Employment Opportunity Commission within 300 days of the date the last "unlawful employment practice." 42 U.S.C. § 2000e–5 (e).[2]

The parties offer dueling characterizations of the relevant events and their dates. Defendant argues that the last unlawful employment practice was plaintiff's termination, which took effect on June 25, 1997, and that plaintiff did not file a charge of discrimination with the EEOC until October 19, 1998, long after the 300 days had passed. Thus, defendant contends, plaintiff failed to exhaust his ADA claim in a timely fashion, and plaintiff's ADA claim should be dismissed. Plaintiff counters that the last unlawful employment practice was defendant's effort to secure his signature on a general release on June 8, 1998, and that plaintiff's submission of EEOC intake questionnaires on July 16, 1998 constituted the filing of a charge for the purpose of the 300–day limitations period.

 Each party gets it partially right. Defendant is correct that the event that started the clock on plaintiff's 300 days was his termination, not defendant's delivery of the general release. The relevant event in this case must be an "unlawful employment action." The general release could not have been an "unlawful employment action" because the release was offered to plaintiff long after his employment had ended. Furthermore, I find nothing amiss in the general release.[3] Plaintiff's

---

**2.** The ADA adopts the enforcement scheme and remedies of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17. *See* 42 U.S.C. §§ 12117(a).

**3.** The general release provided, in pertinent part:

Employee hereby fully and forever releases and discharges Employer and its parents, affiliates and subsidiaries, including all pre-

contention that the release requires plaintiff to waive future rights and to waive the right to file a charge with the EEOC or PHRC is unfounded. The release does not involve a waiver of future rights; it waives only causes of action arising out of plaintiff's past, terminated employment with defendant. I read the reference in the release to rights "which may exist in the future" to apply to new causes of action arising out of a change in law, not to future factual circumstances that may give rise to a discrimination claim. Furthermore, the release simply prevents plaintiff from filing suit and recovering damages for employment discrimination; it says nothing about filing charges with administrative agencies or cooperating in investigations by such agencies.

Settlement agreements and general releases are not inherently violative of the ADA, Title VII, or any other federal civil rights statute. On the contrary, such agreements are to be encouraged, as they provide a fair, reliable, cost-efficient means of resolving discrimination cases short of litigation. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). My research revealed no instances of a court concluding that a settlement agreement or general release constitutes an unlawful employment practice and therefore a violation of the ADA.[4] Therefore, I conclude that the presentation of the general release to plaintiff was not an unlawful employment action and did not violate the ADA.

 Thus, it is not the date of plaintiff's receipt of the general release, but the date of plaintiff's termination that is the effective date for purposes of starting the 300–day filing period. There is a question, however, as to when plaintiff discovered that he had been terminated. The Court of Appeals for the Third Circuit has held that the discovery rule—under which a limitations period is tolled until plaintiff knows or reasonably should know of his or her injury—is applicable in federal discrimination cases. *See Oshiver,* 38 F.3d at 1385–86 (discussing Title VII) (citing *Cada*

---

decessors and successors, assigns, officers, directors, trustees, employees, agents and attorneys, past and present (hereinafter, collectively "Waste Management"), from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, damages, judgments, orders and liability, of whatever kind or nature, direct or indirect, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, which have existed in the past, which currently exist, or which may exist in the future, arising out of Employee's employment by Waste Management or the termination thereof, including, but not limited to, any claims for relief or causes of action under federal, state or local statute, ordinance or regulation dealing in any respect with discrimination in employment and all claims of employment discrimination ... and any claims, demands or actions based upon alleged wrongful or retaliatory discharge or breach of contract under any state or federal law.
(Exh. E to Complaint, General Release, at ¶ 3.)

4. I could find only one instance of a court objecting to a general release or settlement agreement in the ADA context. In *EEOC v. Astra,* 94 F.3d 738 (1st Cir.1996), the Court of Appeals for the First Circuit affirmed a district court's preliminary injunction on the enforcement of a settlement agreement that prohibited signees from filing charges of discrimination with the EEOC and from assisting the EEOC in its investigation of such charges. The court of appeals was particularly troubled by the non-assistance provision because it violated the public policy of promoting "the free flow of information between victims of harassment and the agency entrusted with righting wrongs inflicted upon them." *Id.* at 745. However, the court of appeals explicitly reserved judgment on the question of whether the non-filing provision was void as against public policy, and I am not certain that such provisions are unenforceable. In addition, the court of appeals did not find that the settlement agreement *itself* violated the ADA or was an unlawful employment practice; it merely concluded the provision of the settlement agreement was not enforceable. There is no indication that the release agreement at issue in this case contained the kind of non-assistance provision at issue in *Astra.*

*v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir.1990)). Here, plaintiff has averred that he did not discover his June 25, 1997, termination until he was notified of it by defendant on December 15, 1997. Drawing all inferences in favor of the plaintiff, then, I conclude, for the purposes of this motion only, that the last discriminatory act took place when plaintiff claims he was notified of his termination, on December 15, 1997.

▇ Plaintiff's argument prevails, however, on the date of the filing of the charge. Plaintiff filed a formal charge of discrimination with the EEOC on October 19, 1998, which was 304 days after December 15, 1997, and therefore not timely. (Defendant's Exh. 2, Charge of Discrimination, Oct. 19, 1998.) However, on July 16, 1998, plaintiff filed two forms with the EEOC—an ADA Intake Questionnaire, and an Allegation of Employment Discrimination form—and he argues that these documents should suffice to toll 300–day limitations period. (Plaintiff's Exh. A, ADA Intake Questionnaire; Allegations of Employment Discrimination.) I am persuaded by plaintiff's argument. Both documents adequately spelled out plaintiff's claims, and both were signed by plaintiff. The latter document was submitted under oath, and plaintiff checked a box on that form labeled "I want to file a charge of discrimination." There is a substantial body of case law among the district courts of this circuit and in the other circuits to support plaintiff's contention that a timely filed intake questionnaire either constitutes an official charge or tolls the 300–day limitations period. *See Ricciardi v. Consolidated Rail Corp.*, 2000 WL 1456736 at 2 (E.D.Pa. Sept. 29, 2000) (filing of intake questionnaire tolls 300–day limitations period); *Bullock v. Balis & Co., Inc.*, 1999 WL 527792 at 2 (E.D.Pa. July 22, 1999) (intake questionnaire constitutes official

charge for statutory filing purposes) (citing *Peterson v. City of Wichita*, 888 F.2d 1307, 1309 (10th Cir.), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Casavantes v. California State Univ.*, 732 F.2d 1441, 1443 (9th Cir.1984); *Price v. Southwestern Bell Tel.*, 687 F.2d 74, 78 (5th Cir.1982)); *but see Gulezian v. Drexel Univ.*, 1999 WL 153720 at 3 (E.D.Pa. Mar. 19, 1999) (intake questionnaire insufficient where EEOC advises grievant that more information is necessary).[5]

Having established that the last alleged unlawful employment practice took place on December 15, 1997, and that plaintiff filed his charge with the EEOC on July 16, 1998, my task is simple. Only 209 days elapsed between the last alleged unlawful employment action and the filing of the charge of discrimination. Therefore, I conclude on the basis of the complaint that plaintiff complied with the 300–day rule and timely exhausted his administrative remedies. Because defendant's sole basis for the motion to dismiss the ADA claim was its argument that plaintiff failed to exhaust his administrative remedies in a timely fashion, and because I conclude that plaintiff timely exhausted his administrative remedies, the motion to dismiss will be denied as to the ADA claim.

### Count II—PHRA Claim

Plaintiff's PHRA claim, however, fails because it was not filed with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the last discriminatory act, as required by 43 Pa.C.S. §§ 959(a), 962. As discussed above, the last alleged act of discrimination in this case took place on December 15, 1997, when plaintiff allegedly became aware of his termination. Plaintiff did not file anything with the PHRC within the 6 months following his receipt of the notice of termination. In fact, nothing from plaintiff

---

5. The text of 29 C.F.R. § 1601.9 provides that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9 (1999). This general, flexible definition suggests that a questionnaire, signed under oath, can suffice as a formal charge under Title VII and the ADA.

reached the PHRC until after he filed his formal charge of discrimination with the EEOC on October 19, 1998, and the EEOC forwarded the charge to the PHRC. (Defendant's Exh. 2, Charge of Discrimination, Oct. 19, 1998.)[6] Thus, I conclude that plaintiff's PHRA claim · is barred because it is apparent from the face of plaintiff's complaint that he failed to exhaust his PHRA claim in a timely fashion.

### Count III—FMLA Claim

Plaintiff's FMLA claim fails to state a claim upon which relief may be granted.[7] The complaint appears to provide three bases for plaintiff's FMLA claim: (1) failure to post notices of FMLA rights; (2) applying monies from accrued vacation days toward the cost of continuation of medical health insurance premiums; and (3) attempting to cancel plaintiff's life insurance. None of these three allegations constitutes a violation of FMLA.

■ First, it is well settled that an employee has no private right of action for a violation of FMLA's notice requirement found at 29 U.S.C. § 2619. *See Local 100, Service Employees Int'l Union v. Integrated Health Servs.*, 96 F.Supp.2d 537, 539–40 (M.D.La.2000) (citing *Gilbert v. Star Building Systems*, 1997 WL 687732No. 97–6021, 1997 U.S.App. LEXIS 30034, slip op. at *1 (10th Cir. Oct. 30, 1997) (unpublished); *Latella v. National Passenger Railroad Corp.*, 94 F.Supp.2d 186, 189

(D.Conn.1999); *Antoine–Tubbs v. Local 513, Air Transport Division, Transport Workers Union of America, AFL–CIO*, 50 F.Supp.2d 601, 618 (N.D.Tx.1998), *aff'd*, 190 F.3d 537 (5th Cir.1999); *Knussman v. State of Maryland*, 16 F.Supp.2d 601, 608 n. 3 (D.Md.1998); *Blumenthal v. Murray*, 946 F.Supp. 623, 626–27 (N.D.Ill.1996); *Jessie v. Carter Health Care Center, Inc.*, 926 F.Supp. 613, 617 (E.D.Ky.1996)); *Hendry v. GTE North, Inc.*, 896 F.Supp. 816, 828 (N.D.Ind.1995).

■ Second, even if defendant used plaintiff's accrued vacation monies to pay his health premiums, defendant did not violate the terms of FMLA. Plaintiff's complaint alleges that the use of accrued vacation pay violated 29 U.S.C. § 2614(c)(1). Section 2614(c) merely requires that an employer maintain group health coverage through a FMLA leave period, and plaintiff does not allege that defendant failed to maintain his coverage during his leave. Thus, I conclude that plaintiff's allegation regarding the payment of his health premiums fails to state a claim for relief under FMLA.

Third, plaintiff's allegation that defendant "attempted to cancel his life insurance coverage" fails to state a claim under FMLA, because plaintiff acknowledges in his complaint that defendant did not in fact cancel his life insurance coverage, or at least that the life insurance coverage was

---

**6.** Plaintiff filed a "Request for EEOC to Dual File Charge with the Pennsylvania Human Relations Commission" on September 3, 1998. The text of that form begins, "You have just filed a charge of employment discrimination with the Equal Employment Opportunity Commission." However, plaintiff had not "just filed" such a charge; the only documents filed by plaintiff by September 3, 1998, were additional forms or questionnaires concerning "Conduct–Related Discipline" and "Forced Resignation." Even if the forms were forwarded to the PHRC on September 3, 1998, the PHRC received them beyond the 180 day period that began on December 15, 1997.

**7.** It could be that plaintiff's FMLA claim also is time-barred, because ordinarily, the statute

of limitations on an FMLA action is two years, and the events that give rise to plaintiff's FMLA claim took place more than two years prior to the filing of this action. Plaintiff alleges that the violation in this case was willful, and therefore a three-year statute of limitations applies. While I doubt that a willful violation of FMLA could arise out of circumstances like these, in which a plaintiff was granted the 12 weeks of leave he requested and defendant waited for a year for plaintiff to return to work before terminating him, I need not resolve the FMLA statute of limitations issue, because I conclude on the merits of the FMLA claim that plaintiff has failed to state a claim.

immediately reinstated, and plaintiff therefore suffered no injury. (Complaint, at ¶ 61.)

Finally, on a general note, I observe that plaintiff received precisely what he was entitled to under FMLA; defendant granted his request for the 12 weeks of leave under 29 U.S.C. § 2612(a)(1)(D). When those 12 weeks expired, plaintiff did not return to work. In fact, plaintiff never returned to work. It is apparent from the complaint that defendant did all that FMLA requires. I conclude that there is no set of facts consistent with the allegations in the complaint under which plaintiff could prove that he was denied his due under FMLA.

### Count IV—Intentional Infliction of Emotional Distress .

Plaintiff's claim for intentional infliction of emotional distress fails because it is time-barred. The limitations period for personal injuries in Pennsylvania is two years. *See* 42 Pa.C.S. § 5524(2). The claim is based solely on conduct that took place during the time plaintiff was working for defendant. (Complaint, at ¶¶ .) Plaintiff last worked for defendant on June 25, 1996, but this action was not brought until March 1, 2000, more than 3½ years later, and far outside the two-year limitations period. Even accepting plaintiff's argument that the notification of termination on December 15, 1997, constituted a tortious act, plaintiff's claim was still brought months beyond the statute of limitations. Thus, I conclude that plaintiff's intentional infliction of emotional distress claim is time-barred, and the motion to dismiss will be granted on that claim.

### Count V—Wrongful Discharge

Plaintiff's wrongful discharge claim also is subject to Pennsylvania's two-year statute of limitations for tort actions. *See Collins v. AT & T Corp.*, 1997 WL 460167 at 1 (E.D.Pa. Aug. 1, 1997); *Gates v. Servicemaster Commercial Serv.*, 428 Pa.Super. 568, 631 A.2d 677 (1993); 42 Pa.C.S. § 5524. Plaintiff was discharged effective June 25, 1997. Accepting as true plaintiff's allegation that he was not informed of his termination until December 15, 1997, plaintiff had until December 15, 1999 to file suit. This action was not filed until March 1, 2000. Thus, plaintiff's claim for wrongful discharge under Pennsylvania law fails.

### Count VI—ERISA Claim

Defendant seeks summary judgment on plaintiff's claim under ERISA. The record in this case is not developed enough at this stage for the Court to consider whether genuine issues of material fact exist on this or any of plaintiff's remaining claims. I believe it would be premature to consider the ERISA claim under Rule 56 of the Federal Rules of Civil Procedure today, and therefore defendant's motion for summary judgment will be denied without prejudice to defendant's right to file a comprehensive motion for summary judgment on all of plaintiff's remaining claims, should defendant choose to do so after discovery is concluded.

### *Conclusion*

For the foregoing reasons, the motion to dismiss will be granted as to plaintiff's claims under the PHRA and FMLA, for intentional infliction of emotional distress, and for wrongful discharge, but denied as to plaintiff's ADA and ERISA claims. The motion for summary judgment on plaintiff's ERISA claim will be denied without prejudice.