**Manfred ZYSK, Plaintiff,**

**v.**

**FFE MINERALS USA INC., f/i/a FFEM–USA, formerly known as Fuller Mineral Processing, Inc., F.L. Smidth, Inc., successor by name change to and f/i/a as Fuller Company and Smidth & Co., successor by name change to and f/i/a as F.L. Smidth & Co., Defendant.**

**Civ. A. No. 00–5874.**

United States District Court, E.D. Pennsylvania.

Dec. 14, 2001.

---

1. Plaintiff, of course, may move for an award of attorneys' fees in accordance with the requirements of Fed.R.Civ.P. 54(d)(2).

Donald P. Russo, Bethlehem, PA, Vanessa M. Nenni, Bethlehem, PA, for Plaintiff.

Jennifer L. Craighead, Barley, Snyder, Senft and Cohen, Lancaster, PA, for Defendants.

## OPINION and ORDER

VAN ANTWERPEN, District Judge.

Plaintiff Manfred Zysk ("Plaintiff") sued his employer, FFE Minerals USA, Inc., which has gone by a variety of other names ("Defendant")[1], alleging that he was discriminatorily discharged after being harassed, denied promotion and demoted based on his age, in violation of the Age Discrimination in Employment Act of 1967, 29 USC § 621 et. seq. ("ADEA") and the Pennsylvania Human Relations Act, 43 P.S. § 951 et. seq. ("PHRA"). Plaintiff further alleges that he was subsequently retaliated against with unfavorable referrals in violation of the ADEA and PHRA after he filed an ADEA charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff also alleges a breach of an implied employment contract in violation of Pennsylvania common law based on his discharge. Though Plaintiff does not dispute that he was an at-will employee of Defendant, he proffers that he gave additional consideration creating an implied contract of employment for "a reasonable period of years" by relocating himself and his family across the country after he was induced to leave another job by Defendant. Defendant moved for summary judgment on all counts.

We now find that Plaintiff has created triable issues of fact under the Third Circuit's lenient standard in discrimination cases regarding some of his ADEA discrimination claims. However, he has failed to present evidence sufficient to overcome summary judgment on the retaliation issue, merely restating his complaint in this regard. Moreover, applying Pennsylvania law, we find that Plaintiff's PHRA claims are time-barred and his breach of contract claim is insufficient as a matter of law, given Pennsylvania's strong presumption in favor of at-will employment and the fact that Plaintiff was employed at Defendant for over two years after his move to Pennsylvania.

To avoid redundancy, rather than setting forth a separate discussion of the facts, we will discuss the relevant details of Plaintiff's case below in connection with our legal determinations.

## I. INTRODUCTION

Our decision takes into account Plaintiff's Complaint and Demand for Jury Trial, filed on November 17, 2000 ("Complaint"), Defendants' Answer to Complaint with Affirmative Defenses, filed on February 7, 2001 ("Answer"), Defendants' Motion for Summary Judgment, Brief and Exhibits, filed on November 5, 2001 ("SJ Mot."), Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and Appendix, filed on November 20 and 21, 2001, respectively ("Opp. to SJ"), and the parties' appearances with documentation at a hearing and oral argument before us on November 29, 2001 ("Hearing Docs.").

## II. DISCUSSION

### A. Statement of Jurisdiction

We have original, subject matter jurisdiction over ADEA claims under 28 USC § 1331. We consider Plaintiff's Pennsylvania common law contract claim and his PHRA claims by exercising our supplemental jurisdiction under 28 USC § 1367(a), since all of his claims arise from the same actions by Defendant.

### B. Summary Judgment Standard

The court shall render summary judgment "if the pleadings, depositions, an-

---

1. We treat the various named Defendants as a single Defendant, and so we generally use the singular word "Defendant," based on evidence we discuss *infra* in section D.

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party—in this case, Plaintiff. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and would support a favorable jury finding. *Id.* at 321 n. 3, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (quoting Fed. R.Civ.P. 56(e)); *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202; *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts, presenting affirmative evidence showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202.

In discrimination and retaliation cases, proof at summary judgment follows a well-established "burden-shifting" approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once a plaintiff has established a prima facie case of discrimination or retaliation, the defendant must rebut an inference of wrongdoing with evidence of a legitimate, non-discriminatory, non-retaliatory reason for the action taken. *Delli Santi v. CNA Ins. Co.*, 88 F.3d 192, 199 (3rd Cir.1996); *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 432 (3rd Cir.2001). If a defendant successfully meets its burden in a discrimination or retaliation case, then in order to avoid summary judgment, Plaintiff must present evidence of pretext, or cover-up, or show that discrimination played a role in the employer's decision-making and had a determinative effect on the outcome. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir.1994); *Weston*, 251 F.3d at 432.

Notwithstanding the non-moving party's burden, the Third Circuit urges special caution about granting summary judgment to an employer when its intent is at issue, particularly in discrimination and retaliation cases. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3rd Cir. 2000).

## C. Timeliness Issues

Defendant argues that Plaintiff's discrimination and retaliation claims under the ADEA and the PHRA are untimely. Defendant is correct as to Plaintiff's PHRA claims, but we find Plaintiff's ADEA claims timely for the reasons set forth below.

### 1. *Undisputed Facts*

The timeline of the case is largely undisputed. On July 24, 1997, Defendant notified Plaintiff of its decision to discharge him, and on July 31, 1997, he was discharged. Plaintiff, through his original

counsel, Robert Trotner, began corresponding with Defendant's in-house counsel on about August 15, 1997. On September 4, 1997, Trotner alleged to Defendant that Plaintiff was discharged discriminatorily, requesting a meeting to discuss the matter. On September 12, 1997, Defendant responded to the September 4 letter, urging Plaintiff through counsel to proceed as he saw fit with his discrimination charges. Similar correspondence continued through October 1997.

On April 6, 1998, 256 days after Plaintiff was notified of his discharge,[2] the EEOC received a nine-page "Complaint" of discrimination from Mr. Trotner, with a verification signed by Plaintiff. On April 29, 1998, the EEOC informed Plaintiff that his charge had been received and docketed (i.e., assigned a Charge Number). On May 7, 1998, the EEOC advised Plaintiff (then Charging Party) through Mr. Trotner that before proceeding with an investigation, the agency required additional documentation from Plaintiff within 33 days. The May 7 letter also stated,

> Please note additionally that if the Respondent named in the charge [i.e., Defendant] is located within the Commonwealth of Pennsylvania and the most recent violation is within 180 days of the date the charge was received by EEOC, the Charging Party must complete the enclosed form from the Pennsylvania Human Relations Commission ("PHRC") to indicate his/her interest in preserving Pennsylvania *state* rights.

On August 4, 1998, the EEOC advised Mr. Trotner that he had ten days to submit information or the EEOC would dismiss Plaintiff's charge for failure to cooperate. The August 4 letter referred to correspondence with Mr. Trotner on May 13, 1998 in which Mr. Trotner notified the EEOC of his intention to file a private discrimination suit. On August 20, 1998, Mr. Trotner FAX'ed extensive documentation to the EEOC, on the basis of which, the EEOC sent Plaintiff draft charges on September 17 and September 25, 1998. On October 28, 1998, the Plaintiff FAX'ed the EEOC investigator handling his case a letter complaining about his attorney's (i.e., Mr. Trotner's) unresponsiveness. Plaintiff had been unsuccessfully attempting to contact his attorney to amend and submit a signed EEOC Charge before the October 28 "deadline" evidently set by the EEOC investigator. Plaintiff requested additional time to perfect the EEOC Charge and suggested that he would likely seek new counsel.

Plaintiff finally signed and dated the official EEOC Charge of Discrimination on November 7, 1998. The EEOC Charge was date-stamped November 10, 1998. The EEOC mailed Defendant its Charge of Discrimination on December 7, 1998. On December 9, 1998, Defendant responded to the EEOC charge, saying it was untimely on its face, observing that the EEOC Charge was date-stamped November 10, approximately 400 days after Plaintiff was discharged.

On January 20, 1999, the EEOC cross-filed the Charge with the PHRC. On March 30, 1999, Defendant argued in a letter to PHRC that Plaintiff's claims were untimely filed based on the PHRA's 180-day Statute of Limitations. On March 31, 1999, the PHRC notified Plaintiff that it was terminating its investigation because

---

**2.** The date Plaintiff was notified begins the statutory period, not the date on which Plaintiff's discharge became effective. This is known as the "Discovery Rule." *See,* e.g., *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 (3rd Cir.1994) ("As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues.... [T]he accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured.")

Plaintiff's discrimination charge was untimely.

On June 1, 1999, Plaintiff was hired by the Lehigh Portland Cement Company. On June 8, 1999, Plaintiff was discharged by this company, allegedly after it received word from Defendant that Plaintiff had filed an EEOC Charge against it. On February 1, 2000, Donald Russo notified the EEOC that he was Plaintiff's new attorney. Mr. Russo submitted a new EEOC Charge for retaliation by Defendant concerning Plaintiff's discharge from Lehigh Portland Cement Co., 238 days earlier.

On August 4, 2000, Defendant responded substantively to Plaintiff's two EEOC Charges, "without prejudice to [their] position that the initial charge[s were] time barred and should be dismissed on that basis alone." On September 1, 2000, the EEOC dismissed Plaintiff's discrimination and retaliation charges and issued 90–day Right to Sue notices. Following the EEOC's dismissals, on September 22, 2000, the PHRC notified Plaintiff that it was closing its file regarding Plaintiff's retaliation claim. On November 17, 2000, Plaintiff filed his Complaint alleging discrimination and retaliation, *inter alia*, within the 90–day period allotted by the Right to Sue letters. On February 7, 2001, Defendant answered Plaintiff's complaint, alleging among its affirmative defenses that Plaintiff did not exhaust administrative remedies in that he filed with the EEOC and PHRC outside the ADEA's and PHRA's respective statutes of limitations. Defendant's summary judgment motion again raised the timeliness problem, which Defendant reasserted in a November 29, 2001 hearing before us.

## 2. *Legal Issues*

■ Because there is no factual dispute regarding timeliness, we may resolve the remaining, purely legal question on summary judgment: namely, whether Defendant asserts correctly that Plaintiff filed administrative charges beyond the appropriate statutes of limitations, requiring our dismissal of the ADEA and PHRC complaints.

### ADEA

The ADEA provides that a plaintiff must exhaust his administrative remedies at least 60 days before filing a lawsuit under the statute. 29 USC § 626(d). A plaintiff exhausts his administrative remedies by filing an EEOC charge alleging age discrimination. *Id.* Pennsylvania is considered a "deferral state" because there is a cooperating state agency, the PHRC. Thus, the federal charge must be filed within 300 days of the last date of alleged discrimination. 29 USC § 626(d)(2); *Colgan v. Fisher Scientific Company*, 935 F.2d 1407, 1414–1415 (3rd Cir.1991), *cert. denied* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991).

Plaintiff's discrimination and retaliation claims were both lodged with the EEOC well within the 300 time limit—256 and 238 days, respectively. In the former instance, Plaintiff (then Charging Party) was assigned a charge number after his original attorney, Mr. Trotner, submitted a complaint, and the EEOC spent approximately seven months communicating with Plaintiff to perfect the formal Charge of Discrimination. Thereafter, the EEOC delayed an additional month before serving the Charge upon the Defendant (then Respondent), and another six weeks before cross-filing the charge with the PHRC.

The EEOC's correspondence with Plaintiff's attorney suggested that the agency might drop the investigation of his charge based on his failure to pursue the matter, thereupon issuing a right to sue enabling Plaintiff to pursue the matter privately within 90 days. At no point did the EEOC

indicate that Plaintiff was in jeopardy of violating the statute of limitations. Having assigned Plaintiff's claims against Defendant an official Charge number on April 29, 1997, the EEOC gave Plaintiff every reason to believe that he had complied with the requirement to file with that agency within 300 days.

We consider the EEOC's extraordinary delay in notifying Defendant and the PHRC of the Charge a failing on the agency's part. Though Plaintiff's original attorney, Mr. Trotner, can also be faulted for his lackadaisical pursuit of the matter with the EEOC, the agency is obliged to receive discrimination charges, have them perfected, notify respondents of them and investigate them and/or dismiss them in a timely manner, issuing a right to sue. These duties exist irrespective of an attorney's lack of diligence—indeed, they exist in many cases where parties are unrepresented by counsel.[3]

When a plaintiff files charges with the agency, the EEOC immediately assigns a charge number and should thereupon notify the defendant of the action pending against it. In this case, it is apparent that the EEOC investigator was waiting for the Plaintiff's attorney to request a Right to Sue notice, as Mr. Trotner had insinuated he would. This might have saved the EEOC investigator the work required in perfecting a charge and commencing investigation. When Mr. Trotner did not immediately request dismissal and a Right to Sue, the investigator should have pursued the matter according to EEOC regulations—whether it required greater effort on the investigator's part or not.

The EEOC carries a public trust based on its mission to eradicate discrimination. Certainly, it may dismiss actions by uncooperative charging parties, but in this case, the EEOC had more than enough information to begin its proceedings based on the nine-page, verified "Complaint" which it received from Mr. Trotner on Plaintiff's behalf on April 6, 1998. The Code of Federal Regulations concerning EEOC official procedures simply states that "[a] charge shall be in writing and signed and shall be verified" (29 C.F.R. § 1601.9); it does not state that the EEOC's official form must be submitted within 300 days in order to protect the statute of limitations. While we encourage all charging parties to follow internal practices that the EEOC has instituted to enable efficient and effective charge filing, we are unwilling to deny would-be plain-

---

3. We agree with those cases suggesting that a represented or a sophisticated plaintiff should be held to a higher standard with respect to his/her need to pursue all claims in a timely manner. *See*, e.g., *Kocian v. Getty Refining and Marketing Co.* 707 F.2d 748, 755 (3rd Cir.1983) ("[E]quitable tolling is particularly appropriate in cases involving 'lay persons unfamiliar with the complexities of administrative procedures.' We have distinguished those cases, however, from cases such as this one involving Title VII litigants who are represented by counsel."), *rev'd on other grounds* in *Colgan*, 935 F.2d at 1415; *Schier v. Temple University*, 576 F.Supp. 1569, 1572 (E.D.Pa. 1984) (summary judgment granted where plaintiff filed outside statute of limitations and she had knowledge of the process from a prior job in an employment office). Thus, imagine Plaintiff, represented by counsel, had first called the EEOC within the statutory period, at day 250, for example, and was misinformed that he did not need to submit a charge before, for example, the 365th day. Since he was represented by counsel in this hypothetical situation, if Plaintiff waited until one year had elapsed to file and receive an EEOC charge number, then we would hold Plaintiff accountable for his failure to file a timely charge, regardless of the EEOC's incorrect information. Our situation is clearly distinguishable. Plaintiff filed a verified charge on the 256th day and shortly thereafter was assigned an EEOC charge number. He knew additional information was required for the EEOC's investigation, but had every reason to believe that the 300–day statute of limitations was tolled.

tiffs their rights when they file written charges, signed under oath, which are assigned EEOC charge numbers, but somehow fail to make it onto EEOC letterhead timely. *See Deily v. Waste Management of Allentown*, 118 F.Supp.2d 539, 543, FN 5 (E.D.Pa.2000).

In *Deily*, the court found in favor of a plaintiff whose formal EEOC Charge of Discrimination was not signed until 304 days after the last date of discrimination. *Id.* The *Deily* complaint was timely, despite the eventual tardiness of the formal Charge, because the plaintiff filed an EEOC Intake Questionnaire and an Allegation of Employment Discrimination form on day 209 after the last incident of discrimination: well within the 300–day limitations period. *Id.* The court observed, "There is a substantial body of case law among the district courts of this circuit and in the other circuits to support plaintiff's contention that a timely filed intake questionnaire either constitutes an official charge or tolls the 300–day limitations period." *Id.*, citing *Ricciardi v. Consolidated Rail Corp.*, 2000 WL 1456736 at 2 (E.D.Pa. Sept.29, 2000) (filing of intake questionnaire tolls 300–day limitations period); *Bullock v. Balis & Co., Inc.*, 1999 WL 527792 at 2 (E.D.Pa. July 22, 1999) (intake questionnaire constitutes official charge for statutory filing purposes) (citing *Peterson v. City of Wichita*, 888 F.2d 1307, 1309 (10th Cir.), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Casavantes v. California State Univ.*, 732 F.2d 1441, 1443 (9th Cir.1984); *Price.v. Southwestern Bell Tel.*, 687 F.2d 74, 78 (5th Cir.1982)); *but see Gulezian v. Drexel Univ.*, 1999 WL 153720 at *3 (E.D.Pa. Mar.19, 1999) (intake questionnaire insufficient where EEOC advises grievant that more information is necessary).

We follow *Deily* and the cases it cites in this regard. We also agree with, but distinguish *Gulezian*, cited for the proposition that the statute is not tolled where the EEOC requests more information after receiving an Intake Questionnaire. In *Gulezian*, the plaintiff completed within the statutory period a questionnaire with insufficient information to comprise a discrimination charge. *Id.* at *2. The EEOC finally received his FAX'ed statement detailing more extensively the basis for his claim on the 304th day. *Id.* The court found this date to be the Plaintiff's filing date, though it occurred two weeks before the plaintiff actually received an EEOC Charge number. *Id.* Because the filing date occurred outside the statute of limitations, his discrimination complaint was time-barred. On the other hand, in our case, Plaintiff submitted a thorough, sworn statement and received a charge number well within the statutory period.

The Third Circuit notes that the time limitations under the anti-discrimination statutes are statutes of limitations, not jurisdictional requirements. *See*, e.g., *Oshiver*, 38 F.3d at 1387. The distinction's significance rests in the fact that jurisdictional requirements are enforced regardless of equitable considerations, whereas statutes of limitations are enforced "in keeping with our goal of interpreting humanitarian legislation in a human and commonsensical manner so as to prevent unnecessarily harsh results in particular cases." *Id.* Here, common sense dictates that Plaintiff would believe his charge was filed with the EEOC on the date the agency received his sworn, detailed complaint. Plaintiff would know he was protected from exceeding the 300–day statutory period as of the date he learned that a charge number had been assigned to his case.

The Supreme Court has explained that the statute of limitations exists to guarantee "the protection of the ... [law] to

those who promptly assert their rights, [and] also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Here, Defendant submits no evidence that it was prejudiced by the EEOC's delay in serving the Charge of Discrimination. Indeed, Defendant admits that soon after Plaintiff's discharge it was on notice that he intended to file suit, inasmuch as Defendant acknowledges correspondence in which Plaintiff's attorney made this apparent beginning only a few weeks after Plaintiff's departure.

For the foregoing reasons, we will not dismiss Plaintiff's ADEA unlawful discharge claim on timeliness grounds, nor Plaintiff's other ADEA discrimination claims occurring or continuing within 300 days of April 6, 1998. As one Eastern District court held, interpreting the Third Circuit, "[S]ince a plaintiff's claim of employment discrimination may only be based on conduct that occurred within the limitations period, ... the filing of the administrative complaint isolates the conduct upon which the claim rests." *Frederick v. Reed*, 1994 WL 57213, *3 (E.D.Pa.), citing *inter alia Jewett v. International Tel. & Tel., Corp.*, 653 F.2d 89, 91 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386, (1981). Thus, Plaintiff's discriminatory performance evaluation and demotion claims are actionable inasmuch as they occurred after June 10, 1997, or, in the case of promotions, inasmuch as Plaintiff applied before June 10 but he remained qualified and the promotion remained available and unfilled after this date. *See Miller v. Beneficial Management Corp.*, 977 F.2d 834, 844 (3rd Cir. 1992) (ongoing failure to promote may be a continuing violation).

■ On the other hand, whether Plaintiff exhausted his administrative remedies with respect to his allegations concerning harassment by younger co-workers presents a more difficult question. Plaintiff's Complaint states, at line 22, "Plaintiff, throughout the course of his employment, and in particular after his first year of regular employment with Defendants, began experiencing age-based harassment." Complaint at p. 5. He later refers in his Complaint to "extreme intimidation tactics" (lines 28 and 29) which "became worse" after Defendants were notified that Plaintiff would be deposed in litigation against it. *Id.* at p. 6. Finally, Plaintiff mentions two discreet incidents, in which his car was attacked with cow manure and in which he overheard a Defendant employee saying he would break Plaintiff's legs. *Id.* at pp. 7, 10. Neither Plaintiff's initial charge with the EEOC nor his formal EEOC Charge of Discrimination specifically describe any of this alleged harassment and intimidation, but his EEOC Charge references "deliberate intimidation tactics and problems."

In its seminal opinion dealing with the proper scope of complaints arising from inadequate EEOC charges, the Fifth Circuit permitted a plaintiff to proceed with her complaint based on national origin discrimination despite the fact that her EEOC charge only alleged sex-based discrimination. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970). The Court observed, "Mindful of the remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme, courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act charges." *Id.* at 460–461. Consistent with this thinking, the *Sanchez* court held that "the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation." *Id.* at 466. "In other words," the Fifth Circuit

explained, "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* Thus, the court permitted Sanchez to proceed on a previously unstated basis of discrimination because it found that the facts alleged in her EEOC charge might have led the agency to discover during the course of its investigation the types of discrimination she subsequently alleged in her complaint. *Id.*[4]

Likewise, we find Plaintiff's harassment claims could be timely because the EEOC's investigation of "deliberate intimidation tactics and problems," included in his formal EEOC Charge, might have reasonably led to the agency's investigation of the age-based harassment described in Plaintiff's Complaint.

However, Plaintiff only alleges one specific incident related to harassment or intimidation occurring within the statutory period. On June 23, 1997, Plaintiff overheard a younger, Defendant employee saying he would break Plaintiff's legs. Complaint at p. 10. The incident did not seem to concern Plaintiff's age, but rather, his expected testimony in an unrelated suit pending against Defendant. Thus, his ADEA harassment claims are insufficient as a matter of law and must be time-barred—not because of his failure to specifically allege them in his EEOC filings, but because he alleges no age-based harassment within 300 days of those filings.

■ Even though Plaintiff failed to allege age-based harassment within the 300–day period, we find that evidence Plaintiff may present showing age-based harassment and Defendant's lack of an appropriate response may be relevant at trial to establish Defendant's discriminatory animus—a necessary element of Plaintiff's remaining age discrimination claims. *See generally Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir.1996) ("The words themselves are only relevant for what they reveal-the intent of the speaker."); *Iadimarco v. Runyon,* 190 F.3d 151, 157 (3d Cir.1999) ("The Supreme Court has recognized that an employer who discriminates will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent.").

*PHRA*

■ On the other hand, Plaintiff's PHRA claims are untimely and must be dismissed since his EEOC charge was filed beyond the State law's 180–day statute of limitations. 43 Pa.C.S.A. §§ 959(a)(h), 962; *Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969, 974 (Pa.1992). In *Vincent,*

---

4. The Third Circuit followed *Sanchez* in *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) ("The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."), called into doubt on other grounds in *Dillon v. Coles*, 746 F.2d 998 (3rd Cir. 1984). *See also Black Grievance Committee v. Philadelphia Elec. Co.*, 79 F.R.D. 98, 114 (E.D.Pa.1978) ("The scope of a civil action properly brought under Title VII is defined not by the often inartful allegations contained in the factual statement of the EEOC charge, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the specific charges of discrimination."), citing *Bernstein v. National Liberty International Corp.*, 407 F.Supp. 709, 713 (E.D.Pa.1976). *Compare Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) ("Rodriguez's charge of discrimination against Mexican–Americans would not reasonably trigger an investigation into discrimination on the ground of disability. The two claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other.")

the Pennsylvania Supreme Court discussed the statute of limitations under the PHRA in cases involving dual filings.[5] *Vincent,* 616 A.2d at 971. The *Vincent* court allowed an undisputed lower court holding on the matter to stand, explaining:

> The [lower] court noted that Vincent had first filed a charge of discrimination ... with the EEOC ... 100 days after the date of the layoff. Although this was within the 180 day period for filing under Title VII [of the Civil Rights Act of 1964—see Footnote 4], and EEOC's transmittal of this charge constitutes a filing under the [Pennsylvania] Human Relations Act, *Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 419 A.2d 431 (1980), the time limit for filing a complaint under the [PHRA] was, at that time, ninety days. The filing by way of transmittal from the EEOC was thus untimely, and any statutory cause of action as to the layoff was barred. *Vincent,* 616 A.2d at 971.

Though the *Vincent* court spoke only in dicta upholding the lower court's decision in this regard, the policy *Vincent* described remains effectively the law applied to discrimination actions in Pennsylvania. *See,* e.g., *Graves v. Pennsylvania Human Relations Com'n,* 634 A.2d 701, 703, 160 Pa.Cmwlth. 65, 69 (1993) (case filed beyond 180 days dismissed as untimely); *Deily,* 118 F.Supp.2d at 543–544 ("Plaintiff's PHRA claim ... fails because it was not filed with the Pennsylvania Human Rela-

tions Commission ('PHRC') within 180 days of the last discriminatory act."); *Frederick,* 1994 WL 57213 at *4. The parties do not present and we do not find State cases after *Vincent* directly addressing the consequences of an EEOC charge cross-filed after the state deadline but before the federal one.

According to PHRC operating policy, "PHRC will deem the complaint filed on the date the charge is received from EEOC." PHRC Policy # 96–01–1 (August 26, 1996). As we have discussed, Plaintiff's EEOC charges were filed on the 256th and 238th days—well outside the PHRA's 180-day statutory period.[6] Thus, Plaintiff's state claims are untimely.

Nonetheless, we understand Plaintiff's reliance on confusing federal case law to reach a contrary conclusion—namely, that "a timely filing with the EEOC is tantamount to a timely filing with the PHRC." For example, in *Woodson v. Scott Paper Co.,* 109 F.3d 913, 926, FN 12 (3rd. Cir. 1997), *cert. denied,* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (U.S.1997), the Third Circuit observed:

> Pennsylvania courts have ruled that, if the EEOC transmits the claim to the PHRC, the filing requirement of the PHRA has been satisfied. The Pennsylvania Superior Court has held that the verified complaint filing requirement of the PHRA is satisfied if the EEOC actually transmits the EEOC charge to the PHRC. *See Lukus v. Westinghouse*

---

5. In 1992, when *Vincent* was decided, the federal discrimination laws' time limits were 180 days in Pennsylvania and the PHRA's statutory period was 90 days. *Id.*

6. We note that in the years since Plaintiff initially filed with the PHRC, the State agency has elaborated upon Policy # 96–01–1, clarifying the statute of limitations issue. The new PHRC Policy Directive Transmittal Form explains that an EEOC Charging Party is required to sign an *Information for Complainant*

*& Election Option to Dual File with the Pennsylvania Human Relations Commission* form in order to ensure that his/her charge is cross-filed with the State agency, protecting State remedies. "Commission Policy Directive Transmittal Form," Policy Number 00–01, December 13, 2000. This form states, "Complaints filed with PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed."

*Elec. Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (Pa.Super.1980). In that case, the Superior Court noted that the EEOC charge satisfied the pleading requirements of 43 Pa.C.S. § 959, and moreover, that the PHRC treated the EEOC charge as capable of triggering PHRC action since it notified the EEOC that it was terminating its investigation of plaintiff's complaint. *Id.* at 452–53. The Pennsylvania Supreme Court has cited *Lukus*, in dicta, for the proposition that the PHRA filing requirement is satisfied if the EEOC forwards a charge to the PHRC. *Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969, 971 (Pa.1992).

Likewise in *Colgan*, the Third Circuit explained,

[I]n an ADEA case we held that a plaintiff in a deferral state [such as Pennsylvania] is entitled to the extended period [of 300 days] provided by § 626(d)(2) regardless of whether he has filed a state administrative complaint within 180 days after the alleged discrimination occurred. [In a case where] the plaintiff filed state and EEOC charges between 180 and 300 days after the alleged unlawful practice ... we relied solely on the EEOC charges in concluding the filing was timely, thus implying that the state filing was not material on that issue. (Internal citations omitted.) *Colgan*, 935 F.2d at 1414–1415.

These cases state the PHRC's policy that EEOC filings will toll the PHRA's statute of limitations where a plaintiff elects to cross-file his charges. They explain that if a plaintiff files with the EEOC beyond 180 days and never files with the PHRA, he/she still benefits from the federal discrimination statutes' 300–day filing period. The holdings mark a change from earlier case law, which held that a plaintiff needed to file timely (within 180 days) with the PHRC to receive the benefit of the extended 300–day federal statute of limitations. *See*, e.g., *Kocian*, 707 F.2d at 748, *rev'd in Colgan*, 935 F.2d at 1415. However, we set forth here for the first time this explanation in no uncertain terms: these federal cases cannot change the State's statute of limitations—which remains 180 days.[7]

7. We note that if Plaintiff had filed his charges with the EEOC within 180 days (instead of on days 256 and 238), and the EEOC delayed an extraordinary length of time in transmitting the charges to the PHRC, as it did in our case, then the situation would be different: Plaintiff's submission to the EEOC would toll the statute of limitations under the PHRA on equitable grounds. In other words, Plaintiff's state claims would remain actionable, despite the EEOC's errors. *See*, e.g., *Altopiedi v. Memorex Telex Corp.*, 834 F.Supp. 800, 807 (E.D.Pa.1993) ("[P]laintiff successfully asserts that there were extraordinary circumstances that prevented him from filing on time. In this case it was the bureaucratic delay of the PHRC which requested plaintiff to sign the charge on the 181st day. Plaintiff's failure to file was not the result of unexcusable [sic] neglect. As such, equitable tolling is justified in this case and this Court has jurisdiction because plaintiff has exhausted his administrative remedies."); *Gabrielle v. Barrett, Haentjens & Co.*, 663 F.Supp. 1187, 1193 (M.D.Pa.1986) ("Pursuant to our Court of Appeals [Third Circuit] instructions ..., plaintiff would be given the opportunity to cure the failure on the part of the EEOC to forward the complaint to the PHRC [in a timely manner.] .... Although referred to the PHRC beyond the three hundred (300) day time period, equitable considerations require that the court construe the claim as timely filed."); *Seredinski v. Clifton Precision Prodcuts Co.*, 776 F.2d 56, 61 FN 7 (3rd Cir.1985) ("[W]e have previously made it clear that the failure of the EEOC to follow its regulations and refer charges to an appropriate state agency for filing will not deprive complainants of their right to proceed before the EEOC."); *but see Woodson*, 109 F.3d at 926 FN 12 (Plaintiff lost his State rights where he did not check a box indicating that he wanted his EEOC charge cross-filed with the PHRC; however, "[W]e note that Woodson's case would be quite different if he had marked the

We therefore dismiss Plaintiff's untimely state claims.

### D. Defendants Smidth & Company and Fuller Company Liability

■ Defendant contends that Smidth & Company and Fuller Company cannot be liable for discriminating against Plaintiff because he was employed by FFE Minerals USA Inc.[8] Defendant argues that these companies cannot be jointly liable because they did not function as one employer, according to "integrated enterprise" analysis. SJ Mot. at p. 12. In our recent opinion in *Ferrell v. Harvard Industries, Inc.*, 2001 WL 1301461, *22–27 (Van Antwerpen, J.), we employed the Third Circuit's reasoning in *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3rd Cir. 2001), cert. denied, —— U.S. ——, 122 S.Ct. 345, 151 L.Ed.2d 261, 2001 WL 826833, applying the four-prong, integrated enterprise test for a parent company's liability as an "employer" under the anti-discrimination statutes. We will not repeat our discussion here, but suffice it to say, a defining inquiry concerns the parent company's actual role in the alleged discriminatory and retaliatory employment practices (i.e., whether there existed "centralized control of labor relations"). *Ferrell*, 2001 WL 1301461 at *25.

Plaintiff Zysk's allegations largely concern several supervisory employees, among them Anthony Hyde and Joseph Mangan. Hyde, Plaintiff's direct supervisor for most of his employment at Defendant, testified in deposition that he was employed by Fuller Minerals, which is now F.L. Smidth. Opp. to SJ at pp. 5–7, 10, 29. Mangan, in an affidavit Defendant provides, testifies, "I am currently employed by F.L.Smidth Inc. (named Fuller Company until the 1st of January 2001) as Manager of Employee Relations and have held this position since 1990." SJ Mot. at A. If Fuller Company and F.L. Smidth employees were in a position to discriminate against Plaintiff and did so, then these companies can be jointly liable to Plaintiff.

Defendant also provides a copy of Plaintiff Zysk's original offer of employment, which appeared on stationery with the heading, "Fuller: A member of the F.L. Smidth–Fuller Engineering Group." SJ Mot. at A–2. Finally, Plaintiff provides documentation from the Pennsylvania Department of State indicating that prior names for FFE Minerals USA, Inc. include Fuller Mineral Processing, Inc. and Fuller–F.L. Smidth Mineral Processing Corporation. Opp. to SJ at Ex. F. The evidence suggests that these Defendants directly employed Plaintiff or are succes-

---

box for the EEOC to cross-file and the EEOC had failed to transmit the charge because of a breakdown in the administrative system."); *Jones v. Baskin, Flaherty, Elliot and Mannino*, 738 F.Supp. 937, 939 (W.D.Pa.1989) (attorney-plaintiff who requested EEOC not to cross-file charge with PHRC is not statute-protected).

8. The summary judgment motion also contends that these Defendants cannot be liable to Plaintiff because, beyond the timeliness issue, he failed to exhaust his administrative remedies with respect to them. SJ Mot. at p. 14 ("Significantly, in both Plaintiff's charges with the EEOC and his dual filing with the PHRC, the only entity named as a Respondent

is Defendant FFE Minerals."). We are uncertain where Defendants conjure this notion, but they are plainly mistaken: both of Plaintiff's EEOC charges specifically name Fuller and F.L. Smidth.

We need not address whether these companies could be held liable to Plaintiff for a breach of implied contract because we find that all of Plaintiff's contract claims must be dismissed based on the State's strong presumption in favor of at-will employment. *See infra* our discussion of Plaintiff's contract claims in Section G. We also need not discuss these companies' liability under the PHRA since all of Plaintiff's PHRA claims are dismissed as untimely, as we discussed in Section C–2, *supra*.

sors in a chain of companies controlling the interest for which Plaintiff worked. In the latter case, their potential for liability is even clearer than if they were liable as parent companies to Plaintiff. *See Rego v. ARC Water Treatment Co. of Pennsylvania,* 181 F.3d 396, 401 (3rd Cir.1999). The Third Circuit's explanation of successor liability in *Rego* applies here:

> In general, in the context of employment discrimination, the doctrine of successor liability applies where the assets of the defendant employer are transferred to another entity. The doctrine allows an aggrieved employee to enforce against a successor employer a claim or judgment he could have enforced against the predecessor. The doctrine is derived from equitable principles, and fairness is the prime consideration in application of the doctrine. The policy underlying the doctrine is "to protect an employee when the ownership of his employer suddenly changes." (Internal citations omitted.)

Because the documentary and testimonial evidence suggests that Fuller Company, F.L. Smidth and FFE Minerals are a chain of names for the same entity with respect to Plaintiff's employment, we find that they may be liable as successors-in-interest. Generally, there is at least a triable issue of fact as to whether Fuller Company and F.L. Smidth can be held liable for discriminating against Plaintiff. The motion for summary judgment with respect to these Defendants, premised upon the notion that they were improperly or inadequately named, is denied.

## E. Discrimination Claims

■ As to Plaintiff's remaining discrimination claims (recall that we eliminated his state claims and harassment claims as untimely), Plaintiff alleged that because of his age, which at the time was 59, he was demoted June 15, 1997, given a negative performance evaluation June 18, 1997, denied promotion to Director of Training and Manual Publications from January to July 1997, denied promotion to Chief Design Engineer–Plant Design in July 1997 and discharged July 31, 1997. *See* Complaint; SJ Mot., Exhibit F, Plaintiff's Initial Complaint to the EEOC, Received April 6, 1997 ("SJ Ex. F"); Hearing Docs., EEOC Charge of Discrimination, November 7, 1998.

Several of these claims, which we found timely (*supra* at C.2), can nonetheless be eliminated at summary judgment because Plaintiff has failed to create a triable issue of fact. Indeed, Plaintiff did not dispute the summary judgment motion as to the demotion or the promotion to Director of Training and Manual Publications, so we dismiss these two events from consideration. As to Plaintiff's negative performance evaluation, he suggests that because it contained "subjective criteria," it was susceptible to discriminatory animus. Opp. to SJ at pp. 31–32. We agree that subjective performance evaluations may be used discriminatorily by those harboring animus. Plaintiff gives correct examples, of an African–American employee being accused of having "a poor attitude" or not "interacting well with others." Opp. to SJ at p. 31. However, Plaintiff has not offered evidence that his evaluation contained such subjective criticisms. Plaintiff was discredited for "over-attention to details," "extreme reaction to criticism," "resistance to criticism" and "resistance to suggestions to change." *Id.* Plaintiff makes much of the fact that his engineering ability was not criticized, but we cannot agree that engineering ability alone will make an effective engineering employee.

Even if we allowed that the troubles Defendant enunciated regarding Plaintiff's performance were based upon subjective criteria, Plaintiff has offered no evidence to support his claim that they were used

discriminatorily. Defendant shows Plaintiff's resistance to criticism by providing a copy of the 1997 performance evaluation itself, which Plaintiff stamped with a seal of his own creation which read, "*CAUTION: INCORRECT INFORMATION, DO NOT DISCLOSE TO ANYONE OUTSIDE FULLER COMPANY,*" with Plaintiff's signature affixed. SJ Mot. at C–2. This extraordinary effort by Plaintiff to resist Defendant's criticism bolstered the very criticism Plaintiff sought to label as "INCORRECT."

In short, Plaintiff suggests that his performance evaluation could have been unlawfully discriminatory, but offers no evidence that it was abused in this manner. We grant summary judgment as to this issue, with the important caveat that the 1997 performance evaluation may still be relevant evidence bearing upon remaining issues.

In evaluating Plaintiff's denial of promotion to Chief Design Engineer–Plant Design, for which he applied in July 1997, we apply the *McDonnell Douglas* framework. As applied to ADEA cases, the plaintiff establishes a prima facie case of discriminatory failure to promote by showing that (1) he is over 40, (2) he is qualified for the position in question, (3) he suffered an adverse employment decision, and (4) the individual selected was substantially younger, creating an inference of age discrimination. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3rd Cir.1995); *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356–57 (3rd Cir.1999) (clarifying the fourth prong). Here, viewed in the light most favorable to Plaintiff, he has established a prima facie case by showing that he was 59, a highly experienced engineer, who was denied promotion to the position in question, which was eventually filled with a 31 year-old man, barely over half the Plaintiff's age. Opp. to SJ at p. 34.

■ Since Plaintiff establishes a prima facie case, Defendant must rebut a presumption of age discrimination by stating a legitimate nondiscriminatory reason for selecting the younger man instead of Plaintiff. *Sempier*, 45 F.3d at 728. Defendant asserts that the position was not filled until months after Plaintiff's discharge and that the individual selected was a graduate engineer who had been within the organization longer, showing qualification for the position through his management of "massive contracts" and his "managerial qualities." SJ Mot. at 34. Meanwhile, Defendant contends, Plaintiff was on performance-related probation for his excessively detailed nature and indecisiveness. *Id.* Moreover, other Defendant employees did not wish to work with Plaintiff. *Id.*

■ Defendant failed to substantiate with evidence its vague assertions concerning the selectee's "massive contracts" and "managerial qualities." Defendant does not contend that Plaintiff failed to apply for the promotion or that he did not meet the basic qualifications of the position. Certainly if Plaintiff's discharge is found legitimate by a trier of fact, then his failure to obtain the applied-for position is understandable. If, however, his discharge is found discriminatory, then his denial of promotion might be found similarly discriminatory. As the Third Circuit explains,

> Of course, a plaintiff can not ultimately prove discrimination merely because his/her employer relied upon highly subjective qualities (i.e. "drive" or "enthusiasm") in making an employment decision. However, just as use of such criteria does not establish discrimination, cloaking such criteria with an appearance of objectivity does not immunize an employment decision from a

claim of discrimination. *Goosby,* 228 F.3d at 321.

Even if we were to find that Defendant's legitimate, non-discriminatory reasons were sufficient to meet its burden, Plaintiff contends that he would have been present and more qualified for the promotion by virtue of his superior years of engineering experience, had he not been discriminatorily discharged. Opp. to SJ at p. 34. Moreover, Plaintiff's letter of recommendation issued at the time of his discharge, which Defendant offers to rebut Plaintiff's retaliation case (*see infra* at section F), lauds Plaintiff for his excellence in engineering skill, professionalism and personal integrity. SJ Mot. at A–5, Letter of Recommendation. "To defeat summary judgment . . . a plaintiff who has made a prima facie showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). Here, Plaintiff has provided circumstantial evidence that Defendant's stated reasons are pretextual. *Sempier,* 45 F.3d at 728.

We recognize that being a suitable candidate for engineering management requires more than just years of experience, professionalism and integrity, and that at trial the trier of fact will not be entitled to substitute its judgment for merit-based judgment by the employer. *Goosby,* 228 F.3d at 321 ("Although courts must be careful not to second-guess an employer's business judgment that it makes in good faith, plaintiff must be allowed to show that her employer's asserted reasons for discharging her were a pretext and that the real reason was illegal discrimination." [Citations.] ). The Third Circuit therefore urges leniency in allowing discrimination actions to go before the trier of fact, stating, "[A] trial court must be cautious about granting summary judgment to an employ-

er when, as here, its intent is at issue." (Citations omitted.) *Id.*

Thus, we deny Defendant summary judgment with respect to Plaintiff's application for promotion to Chief Design Engineer–Plant Design, with one limitation: if Plaintiff cannot establish to the satisfaction of the trier of fact that his discharge was discriminatory, he will be unable to prove that he was qualified for the promotion. Naturally, if Plaintiff was lawfully no longer working at Defendant in any capacity, he could not be promoted.

Next, we address the issue of Plaintiff's July 31, 1997 discharge. As we have discussed, Plaintiff was in the protected class (59 years old), was qualified and was discharged. As to the fourth element of the prima facie case, Plaintiff's position was not assumed per se by a younger employee, but his work was redistributed among several younger employees. The Third Circuit's decision in *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 356 (3rd Cir. 1999), directly addresses this fourth prong. The *Pivirotto* court explained that a discharged individual need not show that his position was refilled per se, referencing the case of "a discharged age-discrimination plaintiff who presented evidence that a younger employee assumed his responsibilities when his employer decided not to replace him." *Id.* at 357, citing *Torre v. Casio,* 42 F.3d 825 (3rd Cir.1994). The latter situation is precisely our situation in this case, construing the evidence in the light most favorable to Plaintiff. Defendant admits in its answer to Plaintiff's interrogatories that two men, then aged 26 and 40, absorbed Plaintiff's work. Opp. to SJ at Ex. F. Thus, Plaintiff makes out a prima facie case of age discrimination based on his discharge.

As Plaintiff points out, Defendant attempts to rebut the presumption with inconsistent arguments: that Plaintiff

was laid off due to a reduction in force despite satisfactory performance, and that Plaintiff's performance was inadequate, as demonstrated by his poor June 1997 performance evaluation. SJ Mot. at 25 *et. seq.* As to the first contention, that Plaintiff was laid off, Defendant's list of employees laid off indicates that Plaintiff was laid off three months before any other engineer. SJ Mot. at Ex. E. Moreover, as Plaintiff suggests, Defendant's General Manager of Engineering, Jack Sweeney, testified that several of the younger employees laid off after Plaintiff were subsequently rehired in other capacities, while Plaintiff was not. SJ Mot. at Ex. M, "Deposition of Jack Sweeney," pp. 13, 58.

Regarding Plaintiff's inadequate performance justifying his discharge, Plaintiff's lay-off letter provided by Defendant, as we discussed above, suggests otherwise. Moreover, Defendant does not dispute Plaintiff's contention that he was placed on a 90-day probation and discharged after roughly 30 days. Even if his performance was substandard, his discharge may have been unusually hasty. *See,* e.g., *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77, 80 (3rd Cir.1983) (failure to follow progressive discipline suggests pretext). In addition, Defendant criticizes Plaintiff's performance in part based on his interactions with others. *Id.* at 21. Yet, Defendant Manager Sweeney admitted in deposition that Scott Hunsicker, a similarly-situated employee, continues to work for Defendant though "pretty much everybody complained about" him because he "was not a particularly pleasant person to work with" and "got on everybody's nerves." *Id.* at pp. 14–15, 18–19. Plaintiff's evidence suggests pretext, i.e. that Defendant's stated rea-

sons for his discharge were not the actual reasons.

Defendant presents strong arguments why Plaintiff's presentation of pretext may not ultimately prevail: the alleged discriminating officials were similar in age to Plaintiff; the same officials who hired Plaintiff, knowing his age, subsequently discharged him, etc. However, the impact of these considerations must be weighed by the trier of fact, which ultimately will decide the delicate question of intent. For now, the pretext Plaintiff presents is sufficient to create a question of fact and overcome summary judgment as to whether his discharge was unlawful under the ADEA.

Finally, we dismissed as untimely Plaintiff's allegation that he was harassed and intimidated by younger co-workers. *See supra* at C–2. We note that even if his allegations concerned timely "harassment," Plaintiff has presented no evidence that he was mistreated by the younger co-workers *based on his age*—which is the first prong of any harassment claim under the ADEA. *See,* e.g., *Tumolo v. Triangle Pacific Corp.,* 46 F.Supp.2d 410, 411 (E.D.Pa. 1999) [9]; *Kunin v. Sears Roebuck and Co.,* 175 F.3d 289, 293 (3rd Cir.1999), cert. denied, 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999) (explaining the test for hostile working environment harassment in a sexual harassment context). It is true, as Plaintiff argues, that Mr. Sweeney acknowledged Plaintiff's complaint about Mr. Hunsicker's and another employee's harassment, and could not verify that any corrective action was taken. *Id.* at pp. 14–17. However, Plaintiff's deposition testimony, explaining at length the conduct he considered harassment, mentioned no action or statement he considered harass-

---

**9.** The *Tumolo* decision explains, "The elements of such a claim are as follows: (1) intentional discrimination because of age, which is (2) pervasive and regular, and which (3) has detrimental effects that (4) would be suffered by reasonable person of the same age in the same position; and (5) respondeat superior liability exists." *Id.*

ment or intimidation based upon his age. *See* SJ Mot. at Ex. E, "Deposition of Manfred Zysk," pp. 41–58. All of the actions he described constituted work-related disagreements. Though we grant summary judgment for Defendant on the harassment and intimidation issues, as we stated previously, such information may be relevant to Plaintiff's remaining claims.

## F. Retaliation Claim

 Plaintiff contends that he was retaliated against by being "blackballed" for having filed with the EEOC after he was discharged. That is, Defendant allegedly communicated to Plaintiff's subsequent employer that it was inadvisable to hire Plaintiff because he filed charges of discrimination against Defendant. Plaintiff began working on June 1, 1998 at Lehigh Portland Cement Company, which discharged him on June 8, 1999, allegedly because of its close connection with Defendant F.L. Smidth & Company. Plaintiff claims he overheard a telephone conversation involving his supervisor at Lehigh Portland Cement Company which formed his impression that Defendant was retaliating against him. Plaintiff's response to summary judgment states,

> Zysk alleged, in paragraph 75 of his Complaint, that his superior at Lehigh, Heinz Kindl, was given specific instructions by a corporate officer at Heidelberger Zement to terminate Zysk because of his EEOC charge. Zysk also averred, at page 74 of his deposition, that he was able to tell that Kindl was discussing his pending EEOC charge. During his deposition, Zysk confirmed that it was apparent to him that Kindl ... had been instructed to fire him because of his EEOC Complaint, and to inform him that his dismissal was due to the fact that an engineer would be coming over from Germany in two days to replace him in his position. Opp. to SJ at p. 12.

While it is true that Plaintiff averred in his Complaint that his new supervisor was "given specific instructions" to fire him based on Plaintiff's EEOC Charge against Defendant, Plaintiff's response to summary judgment presents a misleading characterization of his deposition. In fact, Plaintiff testified as follows:

> Q: And other than your documentation about your assumptions of that communication, can you provide me with any facts to support that supposition?
>
> A: As documented, Mr. [Kindl] made some comments regarding—and was apologetic of hiring me, and he was told that an engineer from Germany would becoming over within two days to take my position.
>
> Q: Okay. Did he tell you why the engineer from Germany was coming over, other than take your position? .... Do you have any information whatsoever that whoever was on the other end of that phone had any knowledge that you filed an EEOC claim?
>
> A: I cannot make that assumption.

Thus, Plaintiff's own testimony belies his retaliation claim, in that it contains no evidence that his new supervisor knew of his EEOC Charge or discharged Plaintiff because of it. Defendant, on the other hand, provides a copy of a sterling recommendation letter which Defendant issued Plaintiff at the time he was discharged, saying that "he was an excellent professional employee who presented the highest skills in the engineering field and the highest standards of personal integrity," and saying simply that a reorganization had resulted in Plaintiff's position being eliminated. SJ Mot. at A–5, Letter of Recommendation. The letter concludes, "We offer our strongest recommendation of Mr. Zysk to any future employer...." *Id.* In sum, the referral letter suggests no retaliatory animus whatsoever.

As we have discussed, it is Plaintiff's burden, upon summary judgment, not to "rest upon mere allegations or denials" but to present "affirmative evidence" suggesting retaliation, sufficient to create a triable issue of fact. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202. Since Plaintiff has presented none, we grant summary judgment as to Plaintiff's retaliation claims.

## G. Contract Claim

We apply Pennsylvania State law to Plaintiff's contract claim, before us through an exercise of our supplemental jurisdiction. *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 2051–2052, 141 L.Ed.2d 364 (1998). In so doing, we apply the law as announced by the Pennsylvania Supreme Court. *See, e.g., Aceto v. Zurich Ins. Co.,* 440 F.2d 1320, 1321 (3rd Cir.1971); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177–178, 61 S.Ct. 176, 85 L.Ed. 109 (1940). Lower state court decisions are persuasive, but not binding, on the federal court's authority; if the State's highest court has not spoken on a particular issue, the "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Smith v. Whitmore,* 270 F.2d 741, 745 (3rd Cir.1959); *see also Polselli v. Nationwide Mut. Fire Ins.,* 126 F.3d 524, 528 (3d. Cir.1997); *Scranton Dunlop, Inc. v. St. Paul Fire & Marine Ins. Co.,* 2000 WL 1100779, at *1 (E.D.Pa. Aug.4, 2000) ("Since this is a matter of state law that has not been decided by the Pennsylvania Supreme Court, a prediction must be made as to how that court would rule if confronted with the same facts.").

■ Under Pennsylvania law there is a strong presumption that employment is at-will and terminable by either party for any reason, or even no reason at all, unless there is a statutory or contractual provision to the contrary. *Geary v. U.S. Steel Corp.,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974); *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 89–90, 559 A.2d 917 (1989); *Ruzicki v. Catholic Cemeteries Ass'n of the Diocese of Pittsburgh,* 416 Pa.Super. 37, 41, 610 A.2d 495 (1992); *Buckwalter v. ICI Explosives USA, Inc.,* 1998 WL 54355, *5 (E.D.Pa.) (Van Antwerpen, J.), affirmed by 175 F.3d 1010 (3rd Cir.1999). We may decide on summary judgment whether Plaintiff alleges sufficient facts to defeat the presumption of at-will employment. *Schoch v. First Fidelity Bancorp.,* 912 F.2d 654, 660 (3d Cir.1990).

■ Pennsylvania's strong presumption of at-will employment may only be overcome when the parties form an "express contract, [an] implied in-fact contract (the parties did not intend it to be at-will), and [when] additional consideration [passes] from the employee to the employer (that is, if the employee bestows a legally sufficient detriment for the benefit of the employer beyond the services for which he was hired, a court may infer that the parties intend to overcome the at-will presumption)."[10] *Ruzicki,* 416 Pa.Super. at 41–42, 610 A.2d 495, citing *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 95,

---

10. Pennsylvania courts also allow a public policy exception to the at-will employment rule, i.e., that employers may not discharge employees for reasons which form clear violations of public policy. *Id.* However, the Pennsylvania Supreme Court has explained that Plaintiffs may not allege discrimination in violation of public policy where they have failed to exhaust their administrative remedies under the PHRA. *Clay,* 522 Pa. 86, 89–90, 559 A.2d 917 ("[I]nasmuch as appellees failed to pursue their exclusive statutory remedy for sexual harassment and discrimination in the workplace, they are precluded from relief. This result is indicated by express provisions of the PHRA, as well as established judicial interpretations of legislative intent.").

545 A.2d 334 (1988); *see also Robertson v. Atlantic Richfield Petroleum Products Co. a Div. of Atlantic Richfield Co.*, 371 Pa.Super. 49, 537 A.2d 814 (1987), appeal denied by 520 Pa. 590, 551 A.2d 216 (1988). As one state court explained, "The sine qua non of the presumption is that except in rare instances, discharges will not be reviewed in the judicial forum.... Several recent decisions have noted that any further erosion of the at-will presumption in Pennsylvania should be effected by the legislature, not the courts." *Ruzicki*, 416 Pa.Super. at 41–42, 610 A.2d 495.

■■■ Here, Plaintiff does not allege that he had an express contract for a defined period of employment. Rather, Plaintiff alleges that his move from the State of Washington to Pennsylvania in order to commence employment with Defendant gave Defendant the "extra consideration necessary to form an implied contract of employment" for a "reasonable period of years." Opp. to SJ at pp. 35–36.

Pennsylvania law does allow for an implied contract for a reasonable period of employment where an employer knowingly induces a plaintiff to sell his home elsewhere and move his family in order to accept an employment offer. For example, in *News Printing Company, Inc. v. Roundy*, 409 Pa.Super. 64, 71, 597 A.2d 662 (1991), the court held that by quitting his prior job, rejecting another job offer, selling his Massachusetts house and purchasing a home in Pennsylvania the plaintiff had provided additional consideration sufficient to rebut the at-will presumption and create an implied contract for a reasonable period of time. Likewise, in *Cashdollar v. Mercy Hosp. of Pittsburgh*, 406 Pa.Super. 606, 610–12, 595 A.2d 70 (1991), the plaintiff supplied additional consideration creating an implied employment contract when he resigned from a well-paying position he had held for four and one-half years, sold his house in Virginia and moved his pregnant wife and two-year-old child to Pittsburgh.

However, in *News Printing Company*, the plaintiff was fired after approximately three months working for the defendant. *News Printing Company*, 409 Pa.Super. at 67, 597 A.2d 662. In *Cashdollar*, the plaintiff was discharged after a paltry sixteen working days. *Cashdollar*, 406 Pa.Super. at 610, 595 A.2d 70. Here, Plaintiff admits that he worked over two years for Defendant. Complaint at pp. 4, 10. Even if we assume *arguendo*, in the light most favorable to Plaintiff, the non-moving party, that his case is one of those "rare instances" in which an implied in-fact contract for a reasonable period of time was created, we hold as a matter of law that his two-plus years of employment with Defendant more than fulfilled the required "reasonable period." The standard Plaintiff invents in his Complaint, that "he and the Defendants had entered into an implied contract whereby the Plaintiff would be employed by the Defendants for a *reasonable period of years*," (Complaint at paragraph 19) does not exist. Our courts would never imply a contract requiring an employer to continue paying an employee for years when his services were no longer useful.

## CONCLUSION

Plaintiff raises a triable issue of fact as to whether he suffered discrimination based on his age under the ADEA, in that Defendant failed to promote and subsequently discharged him, despite his qualifications. Defendant's summary judgment motion is granted as to all other bases and causes of action. This matter will proceed to trial in a manner consistent with the foregoing.

An appropriate order follows.

### ORDER

AND NOW, this 14th of December, 2001, consistent with the foregoing opinion it is hereby ORDERED as follows:

6. Defendants' Motion for Summary Judgment, Brief and Exhibits, filed on November 5, 2001, is DENIED with respect to Plaintiff's ADEA claims against all Defendants that he was discriminated against based on his age when he was denied promotion to Chief Design Engineer–Plant Design and discharged in July 1997.

7. Defendants' Motion for Summary Judgment, Brief and Exhibits, filed on November 5, 2001, is GRANTED with respect to the following claims which are dismissed with prejudice:

• all of Plaintiff's claims under the PHRA;

• all of Plaintiff's common law contract claims;

• all of Plaintiff's retaliation claims under the ADEA;

• Plaintiff's claim that he was discriminatorily demoted based on his age, in violation of the ADEA;

• Plaintiff's claim that he was discriminatorily denied promotion to Director of Training and Manual Publications based on his age, in violation of the ADEA;

• Plaintiff's claim that he received a discriminatory performance evaluation in 1997 based on his age, in violation of the ADEA; and

• Plaintiff's claim that he was harassed and intimidated based on his age, in violation of the ADEA.

This matter will proceed to trial.